### O'CONNOR, Jr., Plaintiff, v. O'CONNOR, Defendant.

Common Pleas Court, Lucas County.

No. 42766. Decided April 9, 1957.

John F. McIlhargey, for plaintiff-husband.
George H. Fell, Wm. Kent Fenton, for defendant-wife.
Fuller, Harrington, Seney & Henry, William L. Kreutz, for defendant-The Toledo Trust Company.

## OPINION
By ALEXANDER, J.

### THE FACTS

This action for divorce was brought by the husband. Defendant-wife, hereinafter called "the wife," filed an answer and cross-petitions for divorce, alimony and child-support. The Toledo Trust Company, trustee of a living trust in which the husband is a named beneficiary, was made a party defendant.

When the cause came on for hearing on the merits, the petition was withdrawn and the hearing proceeded without contest on the wife's amended cross-petition. Plaintiff, hereinafter called "the husband," was found guilty of gross neglect of duty and extreme cruelty, entitling

the wife to a divorce and custody of the children, which were duly granted. All parties, including the Trustee, agreed to continue the cause to permit the filing of briefs and further hearing to determine whether the trust could be invaded by the wife, whose only hope for any alimony and child-support appears to lie in attachment of the husband's interest in the trust. He is what might be termed an intermittent incompetent, having twice been adjudged mentally ill. Since commencement of this action he has been legally restored to competency and has now remarried. However, all mention herein of the wife will refer to defendant Martha, his divorcing wife.

In 1949 John O'Connor Sr. created a living trust, conveying certain assets to The Toledo Trust Company in trust for certain beneficiaries. He died in 1952 leaving his widow, Irma, and son, John Jr., who was unmarried at the time the trust was created, but who married defendant Martha July 23, 1951 and has two children, Therese Marie, born May 17, 1953 and Gerard Kevin, born September 1, 1954. The Donor also left a sister, a nun in Cleveland.

## ARGUMENT

The Trustee opposes the wife's intention to invade the trust, taking the position that she may not be permitted to reach the husband's interest in either income or corpus for four reasons:

1. He has no **vested** interest in the trust.

2. He has a mere **expectancy** or hope of gratuities.

3. **Alienation,** voluntary or involuntary, is expressly forbidden, and must result in **forfeiture** of whatever interest he has.

4. The trust is **discretionary,** ergo unassailable even for support of wife and children of a beneficiary.

We are constrained to find that (1 and 2) the husband's interest, while a future interest subject to defeasance, is a **vested** remainder, and more than an expectancy or hope, and would in any event be alienable; (3) **partial alienation** for the benefit of the wife and children **need not** and **should not** be permitted to work a **forfeiture;** (4) the trust is not **purely discretionary;** it is a spendthrift trust which could become a discretionary support trust, resembling what the English call a protective trust. The forfeiture provided for is not an absolute forfeiture, but a mere modification of conditions, leaving the Trustee with legal title and a positive duty to support the husband, and leaving the husband's beneficial interest still vested in him. We shall try to explain the reasons for these findings after examining the Trust Agreement in some detail.

## THE TRUST AGREEMENT

ARTICLE III "Beneficiaries." (Essentials only):

(1) Provisions apply only during Donor's life.

(2) Provides for payment of taxes upon Donor's death.

(3) ". . . the entire net income shall be distributed to Donor's said wife (Irma, now living) in quarterly . . . installments so long as she lives." (Note, this provision is mandatory.) "In addition . . . the Trustee in its sole judgment and discretion, may distribute to or for her benefit . . . such sums from the principal . . . as it deems necessary . . . but the Trustee, in passing upon the need for such principal distribu-

tions . . . shall take into consideration her income from this and from all other sources." (Note, this is regarded by the Trustee as tantamount to a discretionary power to consume.)

(4) "Upon the death of Donor's said wife, Irma, . . . the property remaining . . . shall be held in trust for the benefit of Donor's son . . . and until the complete distribution of the trust for his benefit has been made . . . Trustee shall distribute to, or for his benefit, the entire net income . . . in quarterly . . . installments.

"The principal . . . shall be distributed as follows: When Donor's said son attains the age of 35 years, . . . the Trustee shall pay to him the sum of $5,000. If and when (he) attains the age of 40 years, . . . the Trustee shall distribute to him one-third of the principal. . ." (Note, these provisions are mandatory.) "When Donor's said son attains the age of 45 years, the entire remaining trust property shall be distributed to him . . . provided . . . Trustee, in . . . its . . . discretion . . . (may) . . . refrain from making such principal distribution . . . and so long as the principal is so retained . . . the Trustee shall continue to distribute to Donor's son, or for his benefit, the entire net income . . . together with such portions of the principal thereof as it deems conducive to said son's welfare." (Note, these provisions are mandatory as to income, discretionary as to principal.)

(5) Provisions applicable only if John Jr. predeceases his mother Irma.

(6) In that event (apparently) 10% of the trust res goes outright to Donor's sister, the nun, if living.

(7) a) "If Donor's said son is survived by issue of his body only, the entire remaining trust property shall immediately vest in such issue per stirpes, but distribution . . . shall be withheld . . . until they . . . (reach) . . . 21 years, pending which time the Trustee, in its . . . discretion, may distribute to or for their benefit . . . income, or principal, or both . . . for their suitable support, comfort, maintenance and education." (Note, there is no discretion as to the vesting of the grandchildren's interest; only as to their enjoyment of it during minority. Another reason for quoting this article is for the bearing it has on the question of Donor's intentions with reference to his grandchildren's support and general welfare.)

(7) b) Similar provisions in case son leaves spouse and children, one-third being set aside for spouse, two-thirds for children, with mandatory provision that spouse receive income, and discretionary provision that she receive "such part of the principal thereof, as it deems necessary and conducive to her general welfare." (Note, again Donor's intention is reflected, this time as to son's spouse.)

(7) c) "If Donor's said son is survived by a spouse only, . . . Trustee shall distribute to her during her lifetime the entire net income from the trust property." (Note, same comment.) After her death income and principal go to other named and unnamed beneficiaries.

(8) Provisions applicable only in case son predeceases both father and mother and leaves neither spouse nor issue.

(9) Provisions to meet the rule against perpetuities. Not applicable.

## ARTICLE IV.
### Prohibition against Alienation
"No payment . . . shall be alienated . . . in any manner . . . by any of the beneficiaries; and, if . . . by reason of . . . event or cause of any nature whatsoever said payments or interest otherwise intended for said beneficiaries . . . shall wholly or in part cease to be enjoyed by them, or any of them, and the same . . . but for this proviso would become vested in some other person . . . the trust . . . shall thereupon cease and determine and . . . shall thereafter be held and distributed by the ·Trustee during the remainder of the life of such beneficiary . . . according to the absolute discretion of the Trustee; but the Trustee may pay to such beneficiary . . . or for his . . . maintenance and support, or to the . . . wife, child or children of such beneficiary . . . such sums as said Trustee, in its absolute discretion, shall deem advisable, . . ."

### DISCUSSION
Quaere: Does husband have anything presently alienable? It is difficult to see why this question is not fully answered by the statute we adopted from New York 25 years ago, §2131.04 R. C.:

"Remainders, whether vested or contingent, executory interests, and other expectant estates are descendible, devisable and alienable in the same manner as estates in possession."

But if for some reason not discernible to this Court above statute should be held inapplicable, we may turn to the decisions of the courts Without careful analysis of the older reported cases in Ohio construing trust agreements like the one before us, this very question seems to have been answered decisively and affirmatively by two very recent Ohio decisions.

In **First National Bank of Cincinnati v. Tenney, 165 Oh St 513,** Ohio Bar, Nov. 5, 1956, the Supreme Court held (Syl. 2):

"An **inter vivos** trust which reserves to the trustor the income for life and an absolute power to revoke during his lifetime, with a remainder over at his death, creates in the remainderman a vested interest subject to defeasance by the exercise of the power to revoke."

(See also Court of Appeals opinion, same case, **101 Oh Ap 531,** Ohio Bar, Feb. 25, 1957.

In **Erman v. Erman, 101 Oh Ap 245,** O. L. R. Jan. 14, 1957, the Hamilton County Court of Appeals holds (Syl. 2):

"A bequest by will of a sum of money, with power to have the full use and disposition of this, both principal and income, during her lifetime, with full power to consume or dispose of the principal as she sees fit, followed by a gift over to trustees of a testamentary trust of any remainder, creates a life estate, with power to consume the entire principal. Such gift over of that which remains of the bequest, not being in contravention of public policy, is valid, and is a vested estate in the remainderman."

In the Cincinnati Bank case the remainderman's interest would be defeated if trustor exercised his power to revoke; in the Erman case, if the life tenant exercised her power to consume; in the case before us, if the Trustee in exercise of the discretion granted it in Section 3 paid out all the assets to the life tenant (Irma). The first two re-

mainders were specifically held to be vested. Why not the third? The matter would seem to be clinched by the Supreme Court's opinion in the Bank case which quoted Simes and Smith in The Law of Future Interests (2 Ed.), Section 113, illustrating a remainder as vested although subject to being defeated by "a power given to a trustee to invade the corpus of the trust for the benefit of some person or persons."

But no matter how securely and firmly vested the interest, Article IV in the trust agreement before us specifically imposes a restraint on alienation, voluntary or involuntary, and professes to invoke a forfeiture of the interest invaded. While the restraint here imposed would be respected in many jurisdictions and an ordinary creditor would be precluded from invading the trust, the distinct weight of authority makes some exceptions, especially in favor of a claim by a beneficiary's wife and children.

The Restatement of the Law of Trusts found this to be the law more than 20 years ago:

"Sec. 157. Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,

"(a) by the wife or child of the beneficiary for support, or by the wife for alimony; . . ."

In Scott on Trusts, 2d. Ed. 1956, Sec. 157, the author cites over 30 cases from 16 jurisdictions and a substantial number of law review articles in support of the rule quoted from the earlier Restatement, and about half as many cases taking the opposite view.

It seems to us to be an inescapable conclusion that the restraint on alienation set forth in Article IV definitely falls within the standard definition of a spendthrift trust: "A trust in which by the terms of the trust a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary is imposed is a spendthrift trust." (Restatement of Trusts, Sec. 152 [2].)

Attention is called to Art. III, Sec. 4) of the Trust Agreement. Upon the death of Donor's wife, Irma, the provision requiring the Trustee to hold the remaining property for the husband's benefit and to pay him "the entire net income" in quarterly installments is mandatory. So is the requirement that the Trustee pay him, out of the principal, $5,000 at age 35, and one-third of the principal at age 40. At age 45 we find the only discretionary provision: the Trustee may distribute or retain the remaining principal; but if it chooses to retain, it has no choice but to continue to distribute to him or for his benefit the entire net income.

Thus the trust as it now stands is only to a very limited extent a discretionary trust as far as the husband is concerned, but is in its essentials an ordinary spendthrift trust, subject to invasion by wife and children under the majority rule. The basis for denying the right of invasion in a discretionary trust is that "if the beneficiary himself cannot compel the Trustee to pay over any part of the trust fund, his assignee and his creditors are in no better position." (Scott, Sec. 155, p. 1084.) But the husband, upon Irma's death, undeniably can compel the Trustee to pay him the entire net income of the remaining assets, and $5,000 from principal when 35, one-third of the principal at 40, and

either the rest of the principal or its income at 45. He has a vested right to reach the trust fund. So would his creditors but for the restraint on alienation.

But, the wife and children "are not 'creditors' of the beneficiary, and the liability of the beneficiary to support them is not a debt. . . . At any rate, there is no difficulty in their enforcing their claims for support against the trust estate if the settlor did not show an intention to exclude them." (Scott, Sec. 157, 1, p. 1109-10.) In this respect they stand in the beneficiary's shoes. They are in **pari statu** with him. His rights are their rights. If he should attempt to assert his rights it would not invoke the forfeiture clause. Netither would it if his wife and children attempted to assert his rights, which are also theirs. This obtains by virtue of the nature of the duty to support and the legal and social consequences of failure to support; and it inheres in the majority rule allowing invasion by dependents despite attempted restraints.

Ohio's position on this issue is not clear. In **40 O. Jur. 513** we read:

"It seems to be quite uniformly held that the interest of the cestui que trust in both spendthrift trusts and trusts for support can be reached by the wife and dependent children of the beneficiary. It has been held that a wife or dependent children can even compel the trustee in a discretionary trust to pay a part of the income to them."

This was written in 1935, and the text is supported by no Ohio citations.

In opposition to this view stands the Common Pleas Court of Franklin County in a very recent case, **McWilliams v. McWilliams, CP 74 Abs 535, 140 N. E. 2d, 80.** This was submitted in 1955 and it is doubtful if the learned judge could have had access to the 1956 Edition of Scott on Trusts, with its comprehensive compilation of authorities showing the trend which has given the affirmative view almost a two-to-one majority.

The McWilliams case holds:

". . . we do not believe it is against public policy for the donor or testator to limit the gift . . . to designated beneficiaries and exclude others, even members of their own families, from any participation in the trust funds."

(There is nothing to indicate any express exclusion of wife or children, the trusts containing only the common "spendthrift clauses.")

Yet it is public policy that is the basis of the rule in favor of the dependents, even regardless of the donor's intentions:

"Even though it is clear that the settlor intended to exclude the beneficiary's wife and children from enforcing their claims for support against his interest in the trust, it has been held in some cases that they are not thereby precluded from reaching the trust estate. This result has been reached on the ground that it is against public policy to permit the beneficiary to have the enjoyment of the income from the trust while he refuses to support his dependents whom it is his duty to support. The claim of a wife and dependent children to support is based upon the clearest grounds of public policy. They are in quite a different position from ordinary creditors who have voluntarily extended credit. It would be shocking indeed to permit a husband to receive and enjoy the whole

of the income from a large trust fund and to make no provision for his needy dependents." (Scott on Trusts, 2d Ed. 1956, p. 1110.)

Stronger language is used in In Re Moorehead's Estate, 289 Pa. 542, 137 A 803; 52 A. L. R. 1251:

"Public policy is not so vague and wavering a matter as not to be rightly invoked in a case of this character, where the degenerating tendencies of marital relations of the present day are so faithfully exemplified by one who comes into court and demands judicial condonation of his violations of law. In every civilized country is recognized the obligation, sacred as well as lawful, of a husband to protect and provide for his family, and to sustain the claim of the husband in the case at bar would be to invest him with a right to be both a faithless husband and a vicious citizen. This case reaches beyond the concern of the immediate parties to it."

The Supreme court of Wisconsin agreed, and in Dillon v. Dillon, 244 Wis. 122; 11 N. W. 2d 628, it brought Wisconsin into line with the majority rule, quoting the Moorehead opinion on public policy at considerable length.

Undoubtedly there is a public policy behind an owner's right to dispose of his property as he pleases. But this right has not been without limitations; witness the statutes of mortmain, the rules against perpetuities and fraudulent conveyances.

At the same time it is public policy that dictates that a family has a right to be supported and that the father must support it. And the law provides sanctions for his failure to do so. If he wilfully disobeys a valid order to support his wife and children he may be fined and jailed for contempt. If he disposes of his assets by conveyance or dissipation so that not enough remains for proper support, he may be fined and imprisoned for contributing to the neglect or dependency of his minor children. If he has the means (including earning capacity) and wilfully, or even carelessly fails to support his children, he is subject to fine and imprisonment, possibly as a felony. (And a rule designed to help him avoid such an eventuality is more for his real benefit than one to help him evade his obligation!)

Public policy requires the mother who has legal custody of the children to supplement the father's support payments, and to give them proper nurture, care and supervision. Failing this the law may deprive her of custody and subject her to the same punishments just noted for the children's father.

That is how strong the public policy is that demands the protection of children and families. There is nothing to compare with it sanctioning the policy of permitting an owner to dispose of his property as he wishes—indeed we are aware of no sanction whatsoever to enforce this right. It must be obvious that in any clash between a policy protecting children and families and one favoring property or any other interest, the former must prevail. And the logic is as cogent, the policy as compelling, whether applied to an ordinary spendthrift trust, a support trust, a discretionary trust, or any other kind of trust.

To deny dependents the right to invade and to adopt a rule that would remit them to their right to reach funds only after they are paid to the beneficiary would serve no useful purpose. It would more likely

serve to defeat the dependents altogether. For one thing, while a trustee, especially a corporate trustee, may be presumed to remain stationary, the opposite may be expected of many beneficiaries. In the McWilliams case (supra) the wife from California sued in Ohio in her vain attempt to reach funds due the beneficiary in Mexico. Also, the fact that a trustor saw fit to create a spendthrift trust and to invest the trustee with more or less discretion speaks volumes as to trustor's fear his beneficiary would ignore legal obligations and dissipate funds as fast as received.

In our view it would be clearly against public policy to deny dependents the right of invasion, thereby permitting donor in effect to conspire and connive with beneficiary to deprive his own family of its lawful right. On the contrary, it seems clear there is an affirmative public policy authorizing invasion for the benefit of wife and children. While this doctrine appears never to have been enounced in any reported Ohio case, frankly we are writing at this length in a nisi prius case in the hope Ohio will eventually line up on the side that looks right ethically, socially and legally.

But if it should be held otherwise by a higher authority and the attempt of the wife and children should precipitate a forfeiture, let us see just what results. By the terms of Art. IV, if the husband should for any reason cease to enjoy the whole interest intended for him and part of it should vest in someone else, the trust as to him would immediately terminate, but the Trustee would continue to hold his payments and distribute them during his lifetime at its discretion, and it "may pay" him for his "support" or to his "wife, child or children" such sums as its discretion dictates.

This sounds to us pretty much like saying, "the trust is dead; long live the trust." In the resulting trust the Trustee, beneficiaries and corpus remain unchanged; there is no shifting of legal title or divesting of beneficial interest. The only difference is that instead of paying the husband specific amounts at specified times, the Trustee will now make payments as it deems advisable. There is no restriction as to income or principal.

But, payments the Trustee must make! In that respect it has no choice. The word "may" emphasized above is clearly directive rather than permissive. The Donor never intended that the Trustee could keep to itself all the assets, or wait until John Jr. dies to distribute the residue. It is clear that it was his intention to provide for the support of his son and his son's family. Else why did he mention wife and children and authorize the Trustee to make payments to them, thereby making them direct beneficiaries? And since he manifested his intention that the Trustee look after them during John Jr.'s life, there is no reason to believe that he intended the metamorphosis of the original spendthrift trust into a discretionary support trust to revoke Sec. 7 (paras. a), b) and c) of Art. III, making provision for the husband's wife and children upon his death.

The Trustee rightly argues that since in a discretionary trust the beneficiary himself cannot compel the Trustee to pay over any part of the trust fund, his assignee and his creditors are in no better position.

But even as to ordinary creditors, which wife and children are not, "the result is different, however, where the trust is not purely discretionary. The trust is purely discretionary where the trustee may withhold the income and principal altogether from the beneficiary, but not where he has discretion only as to the time or method of making payments to the beneficiary or applying the trust fund for his benefit. . . . If the trustee has not discretion to withhold the income and principal altogether from the beneficiary . . . his creditors can reach it, unless there was a valid restraint upon alienation, or unless the trustee was to pay or apply so much of the income or principal as should be necessary for the support of the beneficiary." (Scott, Sec. 155, pp. 1084-5.)

Certainly the discretion bestowed upon the Trustee cannot possibly relieve it of its obvious legal as well as moral duty to support both the husband and his wife and children. Any undue withholding of payments from any of them would clearly be an abuse of discretion. (See Scott, Sec. 155, p. 1084, quoting In re Smith, Ch. 915, 918; 167 L. T. 327, 498.)

We therefore FIND and HOLD that the majority rule as quoted from the **Restatement of Trusts** applies here and the husband's interest may and should be subjected to the claims of his divorcing wife and their two children for alimony and child-support; that these claims should constitute a lien upon the trust res, effective upon the event fixed in Article III, paragraph (4) of the Trust Agreement, to wit, upon the death of Donor's said wife, Irma; that the wife, having already supported herself and children with no help from the husband for nearly two years, having obligated herself to help pay the husband's premarital obligations, and requiring additional sums to enable her to live and raise the children in a manner befitting their station in life, is entitled to awards of substantial alimony and child-support, retroactively and in futuro, and an equitable division of the husband's property, without invoking any forfeiture of his interest.

However, we believe it would be unwise to attempt to fix the amounts at this time. The husband's interest may not come into enjoyment for years, and conditions may be completely altered at that time. The principal may be intact or partly or largely—possibly wholly—consumed (but probably not wholly, in view of Donor's admonition to Trustee, which indicates that payments for any reason other than Irma's welfare, e. g., in order to defeat a remainderman, would be an abuse of the discretion granted.) At present it is impossible to estimate the value of the husband's interest, the wife's needs or the husband's ability to pay. He may be rehabilitated and restored to his former considerable earning capacity, his condition may have worsened, he may be hospitalized or again adjudged incompetent. The wife's situation may have altered substantially, her needs may have increased or diminished. She, too, may have remarried, in which event she would be entitled to division of property but not to alimony from that time forward. Much would depend upon the age, health and schooling of the children. The court cannot possibly make an intelligent or just order now to become operative at some undetermined time in the future.

This cause will therefore be continued for further hearing as soon as possible after the death of Donor's wife, Irma, at which hearing evidence will be received as to the value of the principal, probable income, needs of wife and children, husband's condition and earning capacity, and other matters such as will enable the court to make proper awards of alimony and child-support and an equitable division of the husband's property.

A journal entry in accordance with these findings and holdings may be prepared, allowing exceptions to all parties.