Argued June 14, affirmed as modifed July 20, petiton for rehearing
denied August 5, 1960

# SHELLEY *v.* SHELLEY and THE UNITED STATES· NATIONAL BANK

354 P. 2d 282

*Wilber Henderson,* Portland, argued the cause and submitted briefs for the appellant.

*Harlow F. Lenon,* Portland, argued the cause for plaintiff-respondent. On the brief were Lenon & Willner and John M. Winkler, Portland.

*Zanley F. Galton,* Portland, argued the cause for defendant-respondent Patricia Shelley. On the brief were Goldstein, Galton, Galton & Popick.

Before McALLISTER, Chief Justice, and SLOAN, O'CONNELL, GOODWIN and MILLARD, Justices.

O'CONNELL, J.

This is an appeal from a decree of the circuit court for Multnomah county establishing the rights of the parties to the income and corpus of a trust of which the defendant, The United States National Bank of Portland (Oregon) is trustee.

The assignments of error are directed at the trial court's interpretation of the trust. The trust involved in this suit was created by Hugh T. Shelley. The pertinent parts of the trust are as follows:

"NINTH: All of the rest, residue, and remainder of my said estate, * * * I give, devise, and bequeath to THE UNITED STATES NATIONAL BANK OF PORTLAND (OREGON), in trust, * * * upon the following trusts:

\* \* \* \* \*

"(2) I direct that, all income derived from my trust estate be paid to my wife, Gertrude R. Shelley, as long as she lives, said income to be paid to her at intervals of not less than three (3) months apart;

\* \* \* \* \*

"(4) If my said wife, Gertrude R. Shelley, shall predecease me, and my said son is then alive, or upon my wife's death after my death and my son

being alive, it is my desire, and I direct, that, THE UNITED STATES NATIONAL BANK OF PORTLAND (OREGON), as trustee, shall continue this estate in trust and pay all income derived therefrom to my son, Grant R. Shelley, as long as he lives, said income to be paid to him at intervals not less than three (3) months apart; PROVIDED, FURTHER, That when my son, Grant R. Shelley, arrives at the age of thirty (30) years, my trustee may then, or at any time thereafter, and from time to time, distribute to said son absolutely and as his own all or any part of the principal of said trust fund that it may then or from time to time thereafter deem him capable of successfully investing without the restraints of this trust; PROVIDED, HOWEVER, That such disbursements of principal of said trust so made to my son after he attains the age of thirty (30) years shall be first approved in writing by either one of my brothers-in-law, that is: Dr. Frank L. Ralston, now of Walla Walla, Washington, or Russell C. Ralston, now of Palo Alto, California, if either of them is then living, but if neither of them is then living, then my trustee is authorized to make said disbursements of principal to my son in the exercise of its sole and absolute judgment and discretion; PROVIDED, FURTHER, That, said trust shall continue as to all or any part of the undistributed portion of the principal thereof to and until the death of my said son.

"(5) I further direct and authorize my trustee, from time to time (but only upon the written approval of my said wife if she be then living, otherwise in the exercise of my trustee's sole discretion) to make disbursements for the use and benefit of my son, Grant R. Shelley, or his children, in case of any emergency arising whereby unusual and extraordinary expenses are necessary for the proper support and care of my said son, or said children.

"(6) If the said Grant R. Shelley shall die, and leave surviving him children, it is my desire that,

if my wife be then dead, or upon the death of my wife if she should survive said son, my trustee shall continue said trust for the benefit of said children of my son, Grant R. Shelley, and shall make periodic payments for their benefit at intervals of not less than three (3) months apart, and shall hold said estate in trust to and until the youngest child of Grant R. Shelley shall attain the age of twenty-one (21) years; thereupon, said trust shall terminate, and said estate shall be distributed to the children of my son, share and share alike; If any of said children die before the youngest attains the age of twenty-one (21) years, said distributable estate shall be distributed to the surviving children, share and share alike, or, if there be only one child, to said child.

\* \* \* \* \*

"(8) Each beneficiary hereunder is hereby restrained from alienating, anticipating, encumbering, or in any manner assigning his or her interest or estate, either in principal or income, and is without power so to do, nor shall such interest or estate be subject to his or her liabilities or obligations nor to judgment or other legal process, bankruptcy proceedings or claims of creditors or others."

The principal question on appeal is whether the income and corpus of the Shelley trust can be reached by Grant Shelley's former wives and his children.

Grant Shelley was first married to defendant, Patricia C. Shelley. Two children were born of this marriage. Patricia divorced Grant in 1951. The decree required Grant to pay support money for the children; the decree did not call for the payment of alimony. Thereafter, Grant married the plaintiff, Betty Shelley. Two children were born of this marriage. The plaintiff obtained a divorce from Grant in August, 1958. The decree in this latter suit required the payment of both alimony and a designated

monthly amount for the support of the children of that marriage.

Sometime after his marriage to the plaintiff, Grant disappeared and his whereabouts was not known at the time of this suit. The defendant bank, as trustee, invested the trust assets in securities which are now held by it, together with undisbursed income from the trust estate. The plaintiff obtained an injunction restraining the defendant trustee from disbursing any of the trust assets. Patricia Shelley brought a garnishment proceeding against the trustee, by which she sought to subject the trust to the claim for support money provided for in the 1951 decree of divorce. The defendants, United Adjusters, Inc., and N. J. Campf, obtained judgments against Grant and sought, through garnishment, to reach the trust assets. The latter defendants have not appealed and consequently we are not concerned with their interest in the trust.

The defendant bank finally brought a bill of interpleader tendering to the court for disbursement all of the funds held in trust, praying for an order establishing the respective rights of the interpleaded parties to the trust assets.

The trial court entered a decree subjecting the accrued income of the trust to the existing claims of the plaintiff and Patricia Shelley; subjecting future income of the trust to the periodic obligations subsequently accruing by the terms of the decrees in the divorce proceedings brought by plaintiff and Patricia Shelley; and further providing that in the event that the trust income was insufficient to satisfy such claims, the corpus of the trust was subject to invasion.

We shall first consider that part of the decree which subjects the income of the trust to the claims

of plaintiff and of defendant, Patricia Shelley. The trust places no conditions upon the right of Grant Shelley to receive the trust income during his lifetime. Therefore, plaintiff and Patricia Shelley may reach such income unless the spendthrift provision of the trust precludes them from doing so.

■ The validity of spendthrift trusts has been established by our former cases: *Stein v. U. S. National Bank,* 165 Or 518, 108 P2d 1016 (1941); *Mattison v. Mattison,* 53 Or 254, 100 P 4, 133 Am St Rep 829 (1909). The question on this appeal is whether the spendthrift provision will be given effect to bar the claims of the beneficiary's children for support and the plaintiff's claim for alimony.

In *Cogswell v. Cogswell et al.,* 178 Or 417, 167 P2d 324 (1946), we held that the spendthrift provision of a trust is not effective against the claims of the beneficiary's former wife for alimony and for support of the beneficiary's child. In that case the court adopted the rule stated in 1 Restatement, Trusts, § 157, which reads in part as follows:

"§ 157. Particular Classes of Claimants:

"Although a trust is a spendthrift trust or trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,

"(a) by the wife or child of the beneficiary for support, or by the wife for alimony;"

The defendant bank concedes that the Cogswell case is controlling in the case at bar, but asks us to overrule it on the ground that it is inconsistent with our own cases recognizing the testator's privilege to dispose of his property as he pleases and, further, that it is inconsistent with various Oregon statutes expressing the same policy of free alienation. If we

should accept the premise urged by the defendant bank, that a testator has an inviolable right to dispose of his property as he pleases subject only to legislative restriction, the conclusion is inevitable that the testator may create in a beneficiary an interest free from all claims, including those for support and alimony.

■■ But the premise is not sound. The privilege of disposing of property is not absolute; it is hedged with various restrictions where there are policy considerations warranting the limitation. *Seidenberg v. Seidenberg,* 225 F2d 545 (D.C. Cir 1955), commented upon in 10 SW L J 228 (1956); *England v. England,* 223 Ill App 549 (1922); *Safe Deposit & Trust Co. v. Robertson,* 192 Md 653, 65 A2d 292 (1949); *In re Stewart's Estate,* 334 Pa 356, 5 A2d 910 (1939); *Re Moorehead's Estate,* 289 Pa 542, 137 A 802, 52 ALR 1251 (1927); *Shrewsbury v. Bucklin,* 105 Vt 188, 163 A 626, 86 ALR 133 (1933); Note, 44 Calif L Rev 615, 618 (1956); Note, 19 Rocky Mt L Rev 87 (1946). Not all of these restrictions are imposed by statute. The rule against perpetuities, the rule against restraints on alienation, the refusal to recognize trusts for capricious purposes or for illegal purposes, or for any purpose contrary to public policy, are all instances of judge-made rules limiting the privilege of alienation. Many others could be recited. Griswold, Spendthrift Trusts (2d Ed) § 553; Simes, Public Policy and the Dead Hand, passim; Scott, Control of Property by the Dead, 65 U Pa L Rev 527, 632 (1917). See also: Nussbaum, Liberty of Testation, 23 A B A J 183 (1937); McMurray, Liberty of Testation and Some Modern Limitations Thereon, 14 Ill L Rev 96 (1919); Keeton & Gower, Freedom of Testation in English Law, 20 Iowa L Rev 326 (1935). It is within the court's

power to impose upon the privilege of disposing of property such restrictions as are consistent with its view of sound public policy, unless, of course, the legislature has expressed a contrary view. Our own statutes do not purport to deal with the specific question before us, that is as to whether there should be limitations on the owner's privilege to create a spendthrift trust.

■ The defendant bank insists that the legislative intent to vest in a testator the privilege of disposing of his property free from the claims for alimony and support can be found by inference from our statutes. Thus we are referred to ORS 114.020 declaring that a person may dispose of property by will, and to ORS 167.605, 411.410 and 411.425 imposing liability upon parents only for the support of their children and placing no obligation on a grandparent, which was the relationship of the testator to the children for whom support is claimed in the instant case. We do not believe that the statutes to which defendant bank refers, or any other Oregon statute can be construed to evince a legislative intent to bar the type of claim sought to be enforced in the present case.

There remains, however, the question of whether there is a justification in public policy for the recognition of such claims in the face of a spendthrift trust restraint broad enough to bar them.

In holding that a spendthrift trust is subject to claims for alimony and support the court, in *Cogswell v. Cogswell et al.,* supra, did not disclose the reasoning by which it reached its conclusion. This failure to examine the question of public policy in the area of spendthrift trusts is not unusual, for as Griswold, Spendthrift Trusts (2d Ed), p 634 points out in discussing the validity of spendthrift trusts, "examina-

tion [of public policy] has rarely, if ever, been attempted by the courts," and he admits that "it is obviously a matter difficult to approach and one about which dogmatic conclusions cannot be reached." But once having recognized the validity of spendthrift trusts, which we have and which conclusion defendant bank endorses, the more specific question of the validity of the restraint of such a trust as against the claims of children for support and of the beneficiary's former wife for alimony presents a narrower question of policy which, we believe, is easier to answer. The question is whether a person should be entitled to enjoy the benefits of a trust and at the same time refuse to pay the obligations arising out of his marriage.

We have no hesitation in declaring that public policy requires that the interest of the beneficiary of a trust should be subject to the claims for support of his children. *England v. England,* supra. Certainly the defendant will accept the societal postulate that parents have the obligation to support their children. If we give effect to the spendthrift provision to bar the claims for support, we have the spectacle of a man enjoying the benefits of a trust immune from claims which are justly due, while the community pays for the support of his children. *Wetmore v. Wetmore,* 149 NY 520, 44 NE 169 (1896). We do not believe that it is sound policy to use the welfare funds of this state in support of the beneficiary's children, while he stands behind the shield of immunity created by a spendthrift trust provision. To endorse such a policy and to permit the spectacle which we have described above would be to invite disrespect for the administration of justice. *Seidenberg v. Seidenberg,* 126 F Supp 19, 21 (D.C. Cir 1954), aff'd. 225 F2d 545

(D.C. Cir 1955). One who wishes to dispose of his property through the device of a trust must do so subject to these considerations of policy and he cannot force the courts to sanction his scheme of disposition if it is inimical to the interests of the state. The better reasoned cases in other jurisdictions support this conclusion. *Keller v. Keller,* 284 Ill App 198, 1 NE2d 773 (1936), commented upon in 50 Harv L Rev 143 and 14 Chi-Kent L Rev 276; *Zouck v. Zouck,* 204 Md 285, 104 A2d 573, 105 A2d 214 (1954); *Re Moorehead's Estate,* supra.

The justification for permitting a claim for alimony is, perhaps, not as clear. The adjustment of the economic interests of the parties to a divorce may depend upon a variety of factors, including the respective fault of the parties, the ability of the wife to support herself, the duration of the marriage, and other considerations. Whether alimony is to be granted and its amount are questions which are determined in light of these various interests. It is probably fair to say that the duties created by the marriage relation, at least as they are evaluated upon the termination of the marriage, are conceived of as more qualified than those arising out of the paternal relationship. On the theory that divorce terminates the husband's duty to support his former wife and that she stands in no better position than other creditors, some courts have held that the spendthrift provision insultates the beneficiary's interest in the trust from her claim. *Lippincott v. Lippincott,* 349 Pa 501, 37 A2d 741 (1944). Recognizing the difference in marital and parental duties suggested above, it has been held that a spendthrift trust is subject to the claims for the support of children but free from the claims of the former wife. *Eaton v. Eaton,* 82 N H

216, 132 A 10 (1926), commented upon in 35 Yale L J 1025 (1926). See also, *Eaton v. Eaton,* 81 NH 275, 125 A 433, 35 ALR 1034 (1924). A majority of the cases, however, hold that a spendthrift provision will not bar a claim for alimony. *England v. England,* supra; *Clay v. Hamilton,* 116 Ind App 214, 63 NE2d 207 (1945); *Safe Deposit & Trust Co. v. Robertson,* supra; *In re Sullivan's Will,* 144 Neb 36, 12 NW2d 148 (1943); *Corey v. National Bank of Toledo,* 159 NE2d 814, 817 (Ohio C P 1958); *O'Connor v. O'Connor,* 141 NE2d 691 (Ohio C P 1957); *In re Stewart's Estate,* supra; *Re Moorehead's Estate,* supra; *Dillon v. Dillon,* 244 Wis 122, 11 NW2d 628 (1943). See, *Buchanan v. National Savings & Trust Co.,* 146 F2d 13 (D C Cir 1944). See also, Griswold, Spendthrift Trusts (2d Ed), §§ 335, 336; Comment, 21 Calif L Rev 142 (1932); Comment, 10 Md L Rev 359 (1949); Note, 28 Va L Rev 527 (1942).

As we have already mentioned, the case of *Cogswell v. Cogswell,* supra, is in accord with this latter view. We are of the opinion that the conclusion there reached should be reaffirmed. The duty of the husband to support his former wife should override the restriction called for by the spendthrift provision. The same reason advanced above for requiring the support of the beneficiary's children will, in many cases, be applicable to the claim of a divorced wife; if the beneficiary's interest cannot be reached, the state may be called upon to support her. Cf., *Keller v. Keller,* supra; *Lippincott v. Lippincott,* supra; Griswold, Reaching the Interest of the Beneficiary of a Spendthrift Trust, 43 Harv L Rev 63, 68 (1929); Note, 44 Calif L Rev 615 (1956). In a case involving the claim of a deserted wife, *Re Moorehead's Estate,*

289 Pa 542, 137 A 802, 806, 52 ALR 1251 (1927), the basis for this obligation is well described as follows:

"* * * In every civilized country is recognized the obligation, sacred as well as lawful, of a husband to protect and provide for his family, and to sustain the claim of the husband in the case at bar would be to invest him with a right to be both a faithless husband and a vicious citizen. This case reaches beyond the concern of the immediate parties to it. It affects the status of the family as being the foundation of society and civilization, and hence in a very certain sense is of wide public concern."

Other cases are to the same effect. *Tuttle v. Gunderson,* 254 Ill App 552, 341 Ill 36, 173 NE 175 (1929); *Wetmore v. Wetmore,* supra. See *Audubon v. Shufeldt,* 181 US 575, 577, 21 SC 735, 45 L Ed 1009 (1901); Note, 27 Va L Rev 914, 919 (1941). The case of *Seidenberg v. Seidenberg,* 126 F Supp 19, 23 (D C Cir 1954) aff'd. 225 F2d 545 (D.C. Cir 1955) contains an excellent review of the problem. In summary the court said:

"The family is the foundation of society. The duty of a married man to support and protect his wife and children is inherent in human nature. It is a part of natural law, as well as a requirement of the law of every civilized country. It is not an ordinary indebtedness, such as a contractual obligation or a judgment for damages arising out of a tort. It is a responsibility far superior to that of paying one's debts, important as the latter obligation is. No part of a man's property or income should be exempt from meeting this liability, for he is under at least as great a duty to provide shelter, clothing, and food for his immediate family as he is to furnish them for his own person. The law should not regard with complacency any man who repudiates or ignores this obligation,

which is instinctive in mankind, and should not permit him to flout it with impunity."

The text writers take the same view and in justifying the rule overriding the spendthrift restraint, generally no distinction is made between the claims of dependent children and the claims of the wife for support or alimony. Thus, 2 Scott on Trusts, § 157.1, states:

"* * * The claim of a wife and dependent children to support is based upon the clearest grounds of public policy. They are in quite a different position from ordinary creditors who have voluntarily extended credit. It would be shocking indeed to permit a husband to receive and enjoy the whole of the income from a large trust fund and make no provision for his needy dependents."

Accord: 6 American Law of Property, § 29.130; 1A Bogert, Trusts and Trustees, § 223; Griswold, Spendthrift Trusts (2d Ed), § 339; Note, 14 Temple L Q 229 (1940); Note, 28 Va L Rev 527 (1942).

■ We hold that the beneficiary's interest in the income of the Shelley Trust is subject to the claims of the plaintiff for alimony and to the claims for the support of Grant Shelley's children as provided for under both decrees for divorce. These claims are not without limit. We adopt the view that such claimants may reach only that much of the income which the trial court deems reasonable under the circumstances, having in mind the respective needs of the husband and wife, the needs of the children, the amount of the trust income, the availability of the corpus for the various needs, and any other factors which are relevant in adjusting equitably the interests of the claimants and the beneficiary. Griswold, Spendthrift

Trusts (2d Ed) § 339; 2 Scott on Trusts, § 157.1; Note, 28 Va L Rev 527 (1942).

■ The defendant bank argues that if a policy restricting the permissible scope of spendthrift trusts is desirable, that policy should be declared by the legislature and not by this court. The duty of making a choice of rules in accordance with public interest is shared by both the courts and the legislature. There is nothing about the problem of choosing the policy in this case which makes it any different than most of the cases which come before us. Since the legislature has not spoken, we are free to declare the rule which we think will serve the best interests of the public. This we have done.

In the foregoing treatment of the problem we have assumed that the spendthrift trust provision was intended by the testator to bar the claims of the beneficiary's children and former wife. The language of the spendthrift clause in question is broad, the restraint purporting to free the beneficiary's interest from the "claims of creditors or others." The claims of "others" could be construed to include claims for support and alimony. But with respect to the claims for the support of beneficiary's children, there is a competing thought in the trust provision which permits the invasion of the trust corpus in case of an emergency whereby unusual and extraordinary expenses are necessary for the support of the beneficiary's children. From this obvious solicitude for the welfare of beneficiary's children, it would be reasonable to infer that testator did not intend to make the spendthrift clause a bar to a claim for their support. *Buchanan v. National Savings & Trust Co.*, 146 F2d 13 (D C Cir 1944); *In re Sullivan's Will*, 144 Neb 36, 12 NW2d 148 (1943); *Eaton v. Eaton*,

82 N H 216, 132 A 10 (1926); *Sand v. Beach,* 270 NY 281, 280 NYS 789, 200 NE 821 (1936). However, we prefer to rest the claims for support of the children on the broader ground that a spendthrift trust is ineffective to preclude such claims.

■ The question of the claimants' rights to reach the corpus of the trust involves other consideration. For the reasons heretofore stated, the beneficiary's interest in the corpus is not made immune from these claims. But, by the terms of the trust, the disbursement of the corpus is within the discretion of the trustee (or, in some instances subject to the approval of others), and, therefore, Grant Shelley's right to receive any part of the corpus does not arise until the trustee has exercised his descretion and has decided to invade the corpus. Until that time, the plaintiff and Patricia Shelley cannot reach the corpus of the trust because the beneficiary has no realizable interest in it. *Mattison v. Mattison,* 53 Or 254, 100 P 4, 133 Am St Rep 829 (1909). It has been held that a discretionary trust for the "sole benefit" of the testator's son was enforceable by the son's destitute wife and children on the ground that the support of the son's family fell within the terms of the trust. *Gardner v. O'Loughlin,* 76 N H 481, 84 A 935, 936 (1912). But, assuming without deciding that such an interpretation is reasonable, it has not been extended to a case where there has been a divorce and the wife has ceased to be a member of the family and, therefore, has ceased to be a beneficiary of the trust. *Eaton v. Eaton,* supra. There is nothing in the trust before us which would indicate the testator's intent to make the plaintiff, either directly or indirectly, the beneficiary of the trust. Patricia Shelley could not be regarded as a beneficiary because the decree under

which she claims called only for the payment of support money for the children and not alimony. In some jurisdictions a creditor of the beneficiary of a discretionary trust may attach the potential interest of the beneficiary. *Sand v. Beach,* supra; *Hamilton v. Drogo,* 241 NY 401, 210 NYS 859, 150 NE 496 (1926), commented upon in 26 Colum L Rev 776 (1926). See: Griswold, Spendthrift Trusts (2d Ed), §§ 367, 368, 357; 2 Scott on Trusts, § 155.1. There is no such procedure in Oregon available to the creditor. And at least with respect to the corpus, ORS 29.175 (2) makes the interest constituting the subject matter of the trust free from attachment. It follows that the decree of the lower court in making the corpus of the Shelley Trust subject to the plaintiff's claim for alimony was erroneous.

■ The claims for the support of Grant Shelley's children, provided for in the two divorce decrees, involve a different problem. The trust directed and authorized the trustee, in the exercise of its sole discretion upon the death of settlor's wife, to make disbursements for the use and benefit not only of Grant Shelley, but also for his children. The disbursements were to be made "in case of any emergency arising whereby unusual and extraordinary expenses are necessary for the proper support and care of my said son, or said children." Here the children are named as beneficiaries of the trust and need not claim derivatively through their father. However, they are entitled to a share of the corpus only if, in the trustee's discretion, it is determined that an emergency exists. The defendant bank contends that the expenses of supporting Grant Shelley's children claimed in this case were for the usual and ordinary costs of support and do not, therefore, constitute "un-

usual and extraordinary expenses" within the meaning of the trust provision. It is contended that there was no "emergency" calling for "unusual and extraordinary expenses" because there was no proof of an unexpected occurrence or of an unexpected situation requiring immediate action. We disagree with defendant's interpretation. We construe the clause to include the circumstances involved here, i.e., where the children are deserted by their father and are in need of support. We think that the testator intended to provide that in the event that the income from the trust was not sufficient to cover disbursements for the support and care of either the son or his children an "emergency" had arisen and the corpus could then be invaded. The decree of the lower court would permit the corpus to be employed if the "assets in the hands of the Executor [trustee] and the income cash from said trust shall be insufficient to pay the obligations of Defendant Grant R. Shelley" to plaintiff and Patricia Shelley. The decree is too broad; first because, as we have already indicated, it improperly includes the plaintiff's claim for alimony; second, because it permits encroachment upon the corpus without reference to whether the trustee has exercised his discretion or whether there has been an emergency as contemplated by the testator.

It is to be noted that the children of Grant Shelley are not beneficiaries of the income of the trust; they may reach it only as persons having claims against the beneficiary, Grant Shelley. If, for example, Grant Shelley should decide to support his children out of assets other than income of the trust, the children would have no claim whatsoever against his interest in the trust. The decree, therefore, should have permitted an invasion of the corpus only if it was neces-

sary to first reach the income under the circumstances just mentioned and such income was insufficient. And further, the decree should have made such corpus available only in the event of the trustee's exercise of discretion authorizing the disbursement for the support of the children under the emergency circumstances provided for in the trust. After the entry of such a decree, if the trustee should refuse to exercise his discretion, or if it is claimed that he exercised it unreasonably, relief may be sought in a court of equity by the children.

The decree of the lower court is affirmed and the cause remanded with directions to modify the decree in accordance with the views expressed in this opinion.