Appellants, Amy Camelia Howard, et al., appeal from a judgment authorizing and ordering appellee, First Alabama Bank of Huntsville, N.A. (Bank), as trustee, to pay a judgment for child support out of the corpus of two trusts.
The issue presented is whether the trustee, Bank, may legally pay child support payments from the corpus of the two trusts, notwithstanding the spendthrift provision[1] in each trust. We hold that the trustee may do so with respect to the 1970 testamentary trust. We, therefore, affirm in part and reverse in part.
On March 30, 1976, appellee, Anna Ruth W. Spragins, filed a petition for Rule Nisi *Page 320 
against her former husband, M.B. Spragins, Jr., praying that he be found in contempt for failure to make child support payments, and seeking a judgment for unpaid child support, plus interest, attorneys' fees, and costs.
Spragins, Jr., filed an answer, in which he admitted being in arrears on child support, and a claim denominated a "third party claim" against the Bank as trustee of two inter vivos trusts and one testamentary trust under the will of his deceased father, Spragins, Sr., seeking construction of the trusts in regard to payment of the claim for unpaid child support. In his answer and "third party claim," as amended, Spragins, Jr., also sought to have his legal granddaughter, his legal children, and all unborn beneficiaries under the testamentary trust, made party respondents.
The Bank answered the "third party claim" of Spragins, Jr., stating that its authority, under the trusts, to pay the claim for past-due child support was unclear. The Bank then cross-claimed against all other parties. It later amended to include any possible widow of Spragins, Jr., and sought to have its authority under the trusts declared.
Three guardians ad litem were appointed to represent the interests of the children, grandchildren, and possible widow of Spragins, Jr., and they filed answers, denying that the corpus of the trust could be invaded to pay child support.
The case was heard ore tenus and judgment was entered for appellee, Anna Ruth W. Spragins. The court ordered Spragins, Jr., to pay child support, plus costs. The court held that the Bank, in its discretion under the terms of the testamentary trust and the 1968 inter vivos trust, was ready and willing to discharge the child support obligation from the substantial corpus available if such payment was authorized. The court found that the Bank was so authorized under the clear language of the trusts, and that it was a reasonable exercise of the trustee's discretion to do so. The court, therefore, ordered that the judgment be paid by the Bank, as trustee, out of the corpus of the trusts, or the corpus of either trust, according to the judgment of the trustee as to what assets of said trusts, or of either trust, should be so expended, in the best interest of the beneficiaries and in the exercise of the trustee's sound financial judgment. The court further found that Spragins, Jr., was not in contempt of court and denied appellee-Anna W. Spragins' request for attorney's fees. The court made awards to each guardian ad litem and required the Bank, as trustee, to pay for any transcripts, costs of appeal, and to secure the costs in case of appeal.
On this appeal, appellants, represented by the guardians ad litem, contend that Spragins, Jr., as a beneficiary of the trusts, is attempting to defeat the intent of his father Spragins, Sr., as settlor and testator, by virtue of Spragins, Jr.'s, seeking to have the trustee Bank pay the child support payments from the corpus of what the appellants denominate as "discretionary trusts." While appellants do not dispute the ex-wife's right to the past-due child support payments, they argue that she has the remedy of going to the income of the trusts, which they say, is adequate for her purposes. Appellants also contend that affirmance would effectively allow one trust beneficiary to strip other beneficiaries of any interest in the trust by simply creating debts equal to or exceeding the corpus of the trust and then demanding payment of said debts by the trustee.
We proceed to construe the pertinent provisions of these trusts which are as follows:
The 1968 inter vivos trust indenture provides, inter alia:
"ARTICLE I
 "The Trustee, (or such successor corporation having trust powers as shall succeed to the business of The First National Bank of Huntsville, by purchase, merger, consolidation, or change of charter or name), shall hold the above described property and such other property as may be acquired by the Trustee, for the use and benefit of the Beneficiaries hereinafter set forth, and said Trustee shall administer this Trust for the following purposes: *Page 321 
 "1. To pay the net income quarterly, or at such other intervals as may be determined by the Trustee, (except that said income must be paid at least once a year), to Marion B. Spragins, Jr., the said income payments to be made to Marion B. Spragins, Jr. for as long as he shall live. The Trustee shall also be fully authorized to pay to Marion B. Spragins, Jr., such sums from the principal of the trust estate as in its sole discretion shall be necessary from time to time for his medical care and reasonable support.
 "2. If at any time the Trustee deems it inadvisable to make the income payments direct to the said Marion B. Spragins, Jr., the Trustee is hereby authorized, in its sole discretion, to apply the net income from this Trust for the support and maintenance of said Beneficiary."
* * * * * *
"ARTICLE IV
 "The Trustee is relieved of making any accounting to the Courts in the administration of this Trust, and it is expressly relieved of applying to any Court for authority to carry out the provisions of this Trust, as it is intended hereby that the Trustee shall have full and complete authority to administer the Trust in the manner it deems best, without the aid or assistance of any Court."
* * * * * *
"ARTICLE VI
 "To the extent permitted by law, no Beneficiary under this Trust shall have the power to dispose of, or to change by way of anticipation, any interest given to him, or her, and all sums payable to any Beneficiary shall be free and clear of his, or her debts, contracts, distributions, and anticipations, and shall not be taken or reached by any legal or equitable process in satisfaction thereof." (Italics supplied.)
The 1970 testamentary trust provides, inter alia:
 "(1) The Trustee shall divide the Trust Estate into equal separate shares so as to provide one share for each then living lawful child of mine and one share for the then living lawful descendants, collectively, or each deceased child of mine, per stirpes. Each of said shares of my Trust Estate shall be administered as follows:
 "(a) The share of my Trust Estate held for the benefit of my son M. Beirne Spragins, Jr. shall be held in trust for the benefit of M. Beirne Spragins, Jr. and his lawful children, and during the lifetime of M. Beirne Spragins, Jr. my Trustee shall pay to my said son or to his lawful children such amounts from the trust income or principal as my Trustee shall determine to be necessary and advisable for the reasonable support of the said M. Beirne Spragins, Jr. and his lawful children. . . ."
* * * * * *
 "(2) PROVISIONS RELATING TO TRUSTS. With respect to all the trusts herein created:
 "(a) In making payments committed to its discretion, to or for the benefit of any beneficiary, my Trustee shall take into consideration any other income or support received, or property possessed by such beneficiary, and known to my Trustee, but the extent to which such other income, support, or property must be first used or liquidated by such beneficiary, shall be in the absolute discretion of my said Trustee.
 "(b) The interest of beneficiaries in principal or income shall not be subject to claims of their creditors or others, nor to legal process, and may not be voluntarily or involuntarily anticipated, alienated, or encumbered."
In a true "discretionary trust," the general rule is that the beneficiary's interest is not subject to a claim for child support. E.g. In re Watts, 160 Kan. 377, 162 P.2d 82 (1945);Watts v. Watts, 151 Kan. 125, 98 P.2d 125 (1940); see also
"Trust — Claim Against Beneficiary," 91 A.L.R.2d 262, at 281.
The trusts in question, here, however, are not true "discretionary trusts." A true discretionary trust "must be *Page 322 
distinguished from trusts where the discretion of the trustee pertains to the item or manner of the payments, or to the size of the payments needed to support the beneficiary. The trustee must be free to pay or apply or to totally exclude the beneficiary, if the trust is to be called `discretionary' in a technical sense. Bogert, Trusts Trustees, 2d ed. § 228 at 718-19. The language of both trusts clearly negates any impression that these trusts are true discretionary trusts. In the 1968 inter vivos trust indenture, it is expressly provided that the income must be paid quarterly, or at such other intervals as may be determined by the Trustee, (except that said income must be paid once a year). . . ." Therefore, although the trustee is granted discretion by the terms of this trust, the mandatory provision that the income be paid at least annually clearly demonstrates that this is not a true discretionary trust. The same holds true for the 1970 testamentary trust. Although that trust vests "absolute discretion" in the trustee, Bank, nevertheless, by its express terms it is clear that the trustee, Bank may not totally exclude the beneficiaries. Therefore, this trust, too, may not be termed a true discretionary trust, and the general rule mentioned above is applicable.
The rule is different for support or spendthrift trusts. Here, the rule is that, absent a statute, the income of a spendthrift or a support trust of which the husband is the current income beneficiary may be reached to satisfy his wife's claim for child support. E.g. Shelley v. Shelley, 223 Or. 328,354 P.2d 282 (1960); Zouck v. Zouck, 204 Md. 285, 104 A.2d 573
(1954). See also II Scott on Trusts, 3d ed. § 157.1.
It is also generally held that the corpus of the trust may be reached to satisfy the claim for child support. Dillon v.Dillon, 244 Wis. 122, 11 N.W.2d 628 (1943); In re Chusid'sEstate, 60 Misc.2d 462, 301 N.Y.S.2d 766 (1969); Shelley v.Shelley, supra; "Trust — Claim Against Beneficiary," 91 A.L.R.2d 262, at 296; Zouck v. Zouck, supra.
The raison d'etre for these rules is articulated in several different ways. Some courts base their holdings on the settlor's intent. E.g. Dillon v. Dillon, supra. Other courts hold that child support is not a "debt" contemplated by the spendthrift provision of the trust. E.g. Marsh v. Scott,2 N.J. Super. 240, 63 A.2d 275 (1949); In Re Moorehead's Estate,289 Pa. 542, 137 A. 802 (1927). Some courts have said that it would be contrary to public policy to hold that a wife may not enforce child support claims against a recalcitrant husband. E.g. Wife v. Husband, 286 A.2d 256 (Del.Ch. 1971); In reChusid's Estate, supra. These decisions reflect the wide variety of reasons which courts have given to justify these rules.
As would be expected, some courts have refused to adopt these positions. E.g. Smith v. Francis, 221 Ga. 260, 144 S.E.2d 439
(1965); Schwager v. Schwager, 109 F.2d 754 (7th Cir. 1940). They appear to be in the minority, however.
In the instant case, both trusts contained spendthrift provisions. It seems reasonable to assume, however, particularly with reference to the 1970 testamentary trust, that Spragins, Sr., intended to refer only to contracts or debts ordinarily made or incurred in the usual contractual or financial transaction. To assume that it was the Spragins Sr.'s intent, with respect to the 1970 trust, to deliberately allow his own son to deprive his own grandchildren of the necessary protection and support, which by law the son owed them (and who are themselves beneficiaries under the trust) is supportable neither by common sense nor by the terms of that trust.
Thus, it is that in this case, we base our decision on the 1970 testamentary trust, and need not consider the 1968 inter vivos trust. We have reached this conclusion for two reasons. First, the language of the 1970 testamentary trust clearly evidences the testator's intent that both corpus and income be used and that Spragins, Jr.'s children are beneficiaries. The language of the 1968 inter vivos trust is less conclusive. Second, the corpus of the 1970 testamentary trust is significantly larger than that of the 1968 inter vivos trust and can easily accommodate *Page 323 
the lump-sum child support payment.
The 1970 testamentary trust is not greatly dissimilar to the trust involved in Clarke v. Clarke, 246 Ala. 170, 19 So.2d 526
(1944). In Clarke, the beneficiary's daughter contended that she, too, was an independent beneficiary and, as such, entitled to share equally with her father in the net proceeds of the trust. The pertinent provisions of the trust were as follows:
 "`(b). The trustee shall pay to or for the benefit of my son, Basil M. Clarke, during his life all of the net income from the trust property.
 "`It is my will that the income from the trust estate which I have directed to be paid to or for the benefit of my said son shall not be liable for or subject to any debts or obligations of my said son, nor shall my said son have the right or power to transfer or assign said income or any part thereof and the trustee shall have the right and power and it shall be its duty at any time during the existence of this trust that the trustee deems best for the trustee to expend, use and apply the income for the comfort, support and maintenance of my said son and/or his family, if he has a family, as the trustee may deem best instead of paying over the income or any part thereof to my said son, it being my will that said income shall not be used or applied in paying any debts or obligations against my son or on any order, transfer or assignment made by my son, but on the contrary it is my will that the income shall be used and applied for the support and maintenance of my son and his family, if he has a family, so as to provide a support and maintenance at all times. * * *'"
Although this Court refused to award the daughter one half of the net revenues, the Court held inter alia, that viewing the instrument as a whole, the daughter was also a beneficiary, and, therefore, entitled to participate to the extent of a reasonably sufficient amount to properly maintain her within the trustee's discretion. "Otherwise, the several later provisions, following the single bequest to Basil, directing that the net income of the trust be utilized, at the trustee's discretion, for the benefit of his `family, if he has a family,' must be entirely ignored and rejected, which cannot be done, under any sort of judicial interpretation." 246 Ala. 170,173, 19 So.2d 526. In this case, too, we think that the children are beneficiaries under the testamentary trust.
Moreover, "The claim of a wife and dependent children to support is based upon the clearest grounds of public policy. They are in quite a different position from ordinary creditors who have voluntarily extended credit. It would be shocking indeed to permit a husband to receive and enjoy the whole of the income from a large trust fund and to make no provision for his needy dependents." II Scott on Trusts, 3rd ed. § 157.1, p. 1210.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
TORBERT, C.J., and JONES, ALMON and EMBRY, JJ., concur.
[1] Tit. 58, § 1, Code of Alabama 1940, limits the amount protected by a spendthrift trust to $1,800.00 annually.