MILLICENT R. LOEB *v.* EDWARD SAMUEL LOEB, LOEB'S, INC. AND GERTRUDE ROSEN.

[No. 171S18. Filed September 26, 1973.]

*Thomas W. Munger, George E. Weigle*, of Lafayette, for appellant.

*Louis Pearlman, Jr.*, of Lafayette, for appellees.

HUNTER, J.*—This is an appeal from the trial court's decree awarding a divorce, custody of minor children, and certain property to the plaintiff-appellant in a divorce action. This Court entertains jurisdiction pursuant to Ind. Ann. Stat. § 4-214 (Burns 1968 Repl.). [Note: Burns § 4-214 was repealed effective January 1, 1972.] The appellant raises the following issues for our review:

(1) Whether the trial court awarded the plaintiff an adequate property settlement award.

(2) Whether the trial court erred in evaluating certain corporate stock owned by defendant.

(3) Whether the trial court adequately provided for the support of minor children.

(4) Whether the trial court erred in waiving and forgiving support payments accrued but unpaid under a *pendente lite* support order.

Defendant-appellee filed a motion to dismiss this appeal on February 22, 1969. Omitting formal parts and attached exhibits, said motion reads as follows:

> *"APPELLEES' MOTION TO DISMISS APPEAL*
> *OR TO AFFIRM ORDER*
>
> "The appellees respectfully move the court to dismiss appellant's appeal, or, in the alternative, to affirm the order of the court below from which this appeal is taken, and for grounds of this motion respectfully show to the court the following:
>
> "1. That this is an appeal from a judgment of the Montgomery Circuit Court entered on the 25th day of September, 1970 (Tr. p. 130, 1. 4 to p. 134, 1. 14), a copy of which is attached hereto, made a part hereof and marked 'EX-

---

* This case was transferred and re-assigned to this office June 27, 1973.

HIBIT A,' wherein appellant, Millicent R. Loeb, was granted an absolute divorce, and certain financial benefits.

"2. That appellant, Millicent R. Loeb, prosecuted an appeal to this court, which has jurisdiction pursuant to Clause 15 of Section 4-214 Burns' Indiana Statutes, 1968, Replacement.

"3. That since judgment was entered, appellant, Millicent R. Loeb, remarried on the 11th day of September, 1971. A certified copy of the Certificate of Marriage is attached hereto, made a part hereof and marked 'EXHIBIT B.'

"4. That appellant, Millicent R. Loeb, withdrew, on the 19th day of August, 1971, installments of alimony totaling $4,000.00 from the Clerk of the Montgomery Circuit Court. Said payments had been made by appellee Edward Samuel Loeb, pursuant to the judgment as follows: $2,000.00 on July 1, 1970, and $2,000.00 on July 1, 1971, as set forth in the Affidavit of Louis Pearlman, Jr. which is attached hereto, made a part hereof and marked 'EXHIBIT C.'

"5. That on the 4th day of September, 1971, appellant, Millicent R. Loeb, obtained a new mortgage on the real estate awarded to her in the Montgomery Circuit Court judgment. A certified copy of said mortgage is attached hereto, made a part hereof and marked 'EXHIBIT D.'

"6. That appellant, Millicent R. Loeb, has accepted all of the benefits of said decree of divorce, both financial and marital.

"WHEREFORE, appellees pray that this appeal be dismissed or, in the alternative, that the order appealed from be affirmed. . . ."

In light of this Court's recent decision in *Alderson* v. *Alderson* (1972), 258 Ind. 328, 281 N. E. 2d 82, the above motion must be overruled. *Alderson* abrogated the outdated doctrine of indivisibility as it relates to appeals from divorce decrees. We stated in *Alderson:*

". . . Therefore, this Court concludes that the general rule set forth in Sidebottom v. Sidebottom, *supra,* calling for summary application of the doctrine of estoppel when the appellant has remarried pending appeal, even though the appellant raises no question on appeal concerning the validity of the marital dissolution, should no longer be the law. To the extent Sidebottom v. Sidebottom, *supra,* and all other cases are in conflict herewith, they are to such extent overruled.

"It follows that the doctrine of indivisibility as applied to the trial court's judgment in a divorce proceeding is no longer viable law. It should also be noted that the doctrine was in direct conflict with TR. 59(G), IC 1971, 34-5-1-1 which provides that only those issues raised in a Motion to Correct Errors can be considered on appeal." 281 N. E. 2d at 84.

Overruling the motion to dismiss, we shall now treat this appeal on its merits. The parties were married on June 21, 1952. On June 1, 1966, the plaintiff filed a petition for separate maintenance, charging the defendant with habitual cruelty. The plaintiff sought custody of the minor children, alimony in the sum of $400,000, and child support. Also the plaintiff filed a petition for suit and support money *pendente lite* wherein she prayed for an order requiring defendant to pay a reasonable sum for her and the children's support and for a reasonable sum to prosecute said suit along with attorney fees. On October 17, 1967, defendant filed a cross-complaint for divorce and then, on December 12, 1967, moved for a change of venue. The cause was venued to Montgomery Circuit Court on February 7, 1968. On March 7, 1969, the plaintiff filed an amended complaint seeking divorce.

The defendant is the general manager of Loeb's, Inc., a close corporation owned by defendant's family, of which the defendant's mother is president. On January 27, 1955, the defendant's mother executed a trust agreement which reads in pertinent part as follows:

"(A) WHEREAS, the GRANTOR is the owner and registered holder of Six Thousand Nine Hundred Ten (6,910) shares of the common capital stock of Loeb's Loeb & Hene Company, Inc., a corporation organized and existing pursuant to the laws of the State of Indiana, which stock was acquired by her by bequest from her late husband, Samuel M. Loeb; and

"(B) WHEREAS, the GRANTOR desires to enjoy the income from said stock during her lifetime but also desires to make certain that from and after her death said stock shall become the property, in equal shares, of the three

children born to her and Samuel M. Loeb; now, therefore,
"(C) In consideration of the premises hereof, and in consideration of the promises of the TRUSTEES herein on their part to be performed, and in consideration of the transfer to the TRUSTEES by the grantor of the property as hereinafter provided, it is hereby mutually agreed and understood by and between the GRANTOR and the TRUSTEES, as follows:

"1, Said GRANTOR, simultaneously with the execution of this Declaration and Agreement, and subject to all of the terms, provisions, and conditions hereof, hereby assigns, transfers, and delivers to said TRUSTEES, and said TRUSTEES hereby accept, Six Thousand Nine Hundred Ten (6,910) shares of the common capital stock of Loeb's Loeb & Hene Company, Inc., for the following uses and purposes, and subject to all the following terms, conditions, and provisions:

"(a) The TRUSTEES shall collect and receive for this Trust all of the cash dividends paid upon said shares of stock, or other income, and after paying any taxes of any kind that may be assessed against said Trust or the property thereof and any necessary expenses of said Trust, shall pay the net income of this Trust quarterly to Gertrude Loeb so long as the said Gertrude Loeb shall live.

"(b) The TRUSTEES shall also collect and receive any and all dividends paid in stock of Loeb's Loeb & Hene Company, Inc. as the result of the shares owned and held by this Trust, but in the event of the declaration of any stock dividend and the receipt thereof by the TRUSTEES, said stock received as such dividend shall be added to and shall become a part of the corpus of this Trust and thereafter held as such by said TRUSTEES.

"(c) This Trust shall continue until the death of the said Gertrude Loeb, at which time it shall cease and terminate, and the surviving Trustee or Trustees shall promptly pay over, assign, transfer, and deliver all the principal, and any undistributed income, in equal shares, and in kind, to Barbara Loeb Alexander, Carol Loeb Wallach, and Edward S. Loeb.

*"In the event any of said principal beneficiaries does not survive the said Gertrude Loeb, then the share of such deceased principal beneficiary shall be paid over, assigned, transferred and delivered to the issue, if any, of such deceased principal beneficiary per stirpes; and in the event*

*such deceased principal beneficiary does not leave issue him or her surviving, then such share shall go in equal portions to the remaining principal beneficiaries. . . ."* (Emphasis added.)

The plaintiff contends that the defendant's beneficial interest under the trust has a pecuniary value that should have been included in the property settlement award. She argues that a vested remainder was created in favor of the defendant. The defendant, in turn, maintains that his interest is "contingent" only. Both parties in addressing this issue have overlooked the critical scope of inquiry. The central question is not whether the interest is "vested" or "contingent," but, rather, the issue is whether the future interest is so remote that it should not have been included in the property settlement award. Nevertheless, we shall begin by answering the arguments posed.

Nearly one hundred years ago, this Court held that a remainder may be created in personal property as well as in realty. *Owen et al.* v. *Cooper* (1874), 46 Ind. 524. Simes and Smith, *The Law of Future Interests,* § 147, p. 153 (2nd ed. 1956), lends the following discussion on the classification of remainders:

"Where a remainder is limited to an ascertained person, but there are words of condition, it may be either vested or contingent, and this group of cases is perhaps the most difficult to reconcile. *Whether it is vested or contingent is said to depend upon whether the condition is construed as a condition precedent or as a condition subsequent.* If there is an express condition precedent which must be fulfilled before the remainderman is entitled to take possession, the remainder is clearly contingent. Words of condition, however, may be construed to create a condition subsequent, or to add nothing to the legal effect of the instrument.

"In determining whether the condition is 'precedent' or 'subsequent,' the form of the limitation plays a significant role. Professor Gray, in a frequently quoted passage which is directed at this problem, has expressed the distinction thus: 'Whether a remainder is vested or contingent depends upon the language employed. If the conditional element is incorporated into the description of, or into the gift to,

the remainderman, then the remainder is contingent; but if after words giving a vested interest, a clause is added divesting it, the remainder is vested.' " (Emphasis added.)

In *Howard* v. *Batchelder* (1956), 143 Conn. 328, 122 A. 2d 307, 310, the court states the rule as follows:

"It is often difficult to determine whether a given remainder is vested subject to complete defeasance or is contingent. The form of the limitation is of primary importance in solving the difficulty. If the form indicates that the condition is to happen before the remainderman is to take, the remainder is ordinarily held to be contingent. 1 American Law of Property p. 470. If the form is that of an unconditional gift followed by language to the effect that the remainder is to be taken away from the remainderman if a condition happens, then the remainder is generally construed as vested subject to complete defeasance."

Applying the foregoing rules to the facts of the case at bar, we find that the defendant was granted a vested remainder subject to a condition subsequent, i.e., his interest is subject to complete defeasance if he should predecease the settlor. That conclusion, of course, does not end our inquiry. The real issue is whether the remainder should have been included in the property settlement award. We hold that it should *not* have been so included.

The amount of alimony to be allowed in a divorce suit is a matter within the trial court's discretion and its decision will not be reversed on appeal unless an abuse of discretion is shown. *Heckman* v. *Heckman* (1956), 235 Ind. 472, 134 N. E. 2d 695; *Shula* v. *Shula* (1956), 235 Ind. 210, 132 N. E. 2d 612; *Dissette* v. *Dissette* (1935), 208 Ind. 567, 196 N. E. 684; *Van Natta* v. *Van Natta* (1919), 188 Ind. 75, 121 N. E. 825. Under the terms of the trust agreement, it should be noted that the defendant has no *present* interest of possessory value. If he should predecease his mother, he takes nothing under the trust. Further, the trustees have no authority to invade the corpus during the settlor's lifetime. The beneficiaries reap no income while

their mother is living. Likewise, the defendant husband is not presently possessed of any pecuniary value which could have been before the trial court for disposition. The trial court correctly refused to include the remote interest in the property settlement award. We reach the foregoing conclusion after an exhaustive analysis of persuasive authority from outside the State of Indiana as this is a case of first impression in our jurisdiction.

We find unanimous agreement with the proposition that a wife's interest under a trust where she is not a beneficiary can never be greater than her beneficiary-husband's interest. She cannot reach his beneficial interest to satisfy a claim for alimony or support *unless and until he has rights to the trust funds.* Sefton v. San Diego Trust & Savings Bank (1940), Cal. App. 106 P. 2d 974; *In re Watts* (1945), 160 Kan. 377, 162 P. 2d 82; *Slaff* v. *Slaff* (1959), 9 App. Div. 2d 80, 191 N. Y. S. 2d 636; *Shelley* v. *Shelley* (1960), 223 Or. 328, 354 P. 2d 282.

In *Shelley* v. *Shelley, supra,* the Oregon Supreme Court faced the issue as to whether a husband's interest under a discretionary trust could be applied to the wife's alimony and support claims. The husband, unlike the instant case, had the right to receive the trust income during his lifetime. The court held that such income was reachable under a claim for alimony. However, the court carefully distinguished the husband's right to the income from his non-existent access to the corpus of the trust fund:

> "The question of the claimants' rights to reach the corpus of the trust involves other consideration. For the reasons heretofore stated, the beneficiary's interest in the corpus is not made immune from these claims. But, by the terms of the trust, the disbursement of the corpus is within the discretion of the trustee (or, in some instances subject to the approval of others), and, therefore, Grant Shelley's right to receive any part of the corpus does not arise until the trustee has exercised his discretion and has decided to invade the corpus. Until that time, the plaintiff and Patricia Shelley cannot reach the corpus of the trust because

the beneficiary has no realizable interest in it. Mattison v. Mattison (1909), 53 Or. 254, 100 P. 4, 133 Am. St. Rep. 829. It has been held that a discretionary trust for the 'sole benefit' of the testator's son was enforceable by the son's destitute wife and children on the ground that the support of the son's family fell within the terms of the trust. Gardner v. O'Loughlin (1912), 76 N. H. 481, 84 A. 935, 936. But, assuming, without deciding that such an interpretation is reasonable, it has not been extended to a case where there has been a divorce and the wife has ceased to be a member of the family and, therefore, has ceased to be a beneficiary of the trust. Eaton v. Eaton, supra. There is nothing in the trust before us which would indicate the testator's intent to make the plaintiff, either directly or indirectly, the beneficiary of the trust. Patricia Shelley could not be regarded as a beneficiary because the decree under which she claims called only for the payment of support money for the children and not alimony. In some jurisdictions a creditor of the beneficiary of a discretionary trust may attach the potential interest of the beneficiary. Sand v. Beach, supra; Hamilton v. Drogo (1926), 241 N. Y. 401, 150 N. E. 496; 214 App. Div. 819, 210 N. Y. S. 859, commented upon in 26 Colum. L. Rev. 776 (1926). See Griswold, Spendthrift Trusts (2d ed.), §§ 367, 368, 357; 2 Scott on Trusts, § 155.1. There is no such procedure in Oregon available to the creditor. And at least with respect to the corpus, ORS 29.175(2) makes the interest constituting the subject matter of the trust free from attachment. It follows that the decree of the lower court in making the corpus of the Shelley Trust subject to the plaintiff's claim for alimony was erroneous." 354 P. 2d at 289.

In *Storm* v. *Storm* (1970), Wyo. 470 P. 2d 367, the Supreme Court of Wyoming held that where a husband had an expectancy of inheriting a one-half (½) interest in his father's ranch if he survived until the trust holding the property ended, the wife was not entitled to an award based on such expectancy. We find the court's reasoning both logical and just:

"[1] Equitably speaking, it is reasonable to consider the inheritance under consideration the same as future property. With respect to future property, we think the rule must be that, when a court divides property incidental to the grant-

ing of a divorce, the court is limited by the amount of property in its hands for division and a mere expectancy is not subject to division. Hill v. Hill, 82 Cal. App. 2d 682, 187 P. 2d 28, 36.

"[2] Inasmuch as the divorce in this case was sought several months before defendant's expectancy matured; and inasmuch as trial was had and the decision of the court announced before defendant inherited a half interest in his father's ranch, the inheritance must, in equity, be considered the same as future property regardless of the exact date of the entry of the final decree. It would not be 'just and equitable' to consider such property a part of the marital estate and in the hands of the court for disposition." 470 P. 2d at 370.

The following is an excerpt from a Georgia Supreme Court syllabus opinion dealing with expectancies outside the present pecuniary estate of the divorced husband, (of course, in the instant case we are concerned with a future interest and not a mere expectancy, but we find the reasoning analogous) :

"This is a claim case in which Lucille Meeks sought to assert against the administrator of the estate of Tillman Meeks a one-half interest in a described tract of land located in Coffee County. It appears that Lucille Meeks was formerly the wife of Tillman Meeks. She was divorced from him by a decree entered in the Superior Court of Fulton County on July 19, 1960. At that time, Tillman Meeks' father was in life. He died sometime in 1968. The divorce decree undertook to award to plaintiff one-half of any interest that the defendant, Tillman Meeks, would receive and have out of the real and personal property in his father's Georgia estate, either under his father's will, or, if his father should die intestate, one-half of the interest defendant would inherit as an heir at law in property of which his father dies seized and possessed. Tillman Meeks died in 1970 in Fulton County seized and possessed of a tract of land consisting of 68 acres located in Coffee County, Georgia, the same having been acquired from his father under the provisions of his father's will. The claim was transferred by the Ordinary of Fulton County to the Superior Court of Coffee County to be there tried as provided by law. The defendant Kirkland filed a motion to dismiss which was sustained, and the claimant appealed. Held:

"1. The decree relied upon by the claimant, insofar as it purported to vest in her any interest in property to be derived from the 'estate' of the then living C. J. Meeks dealt with a bare expectancy or possibility in which at the time the said Tillman Meeks had no interest. It was utterly void and ineffectual to vest in her any interest in property acquired by him in the future as such expectation or interest could not be a part of his estate out of which an allowance of alimony could be made." *Meeks* v. *Kirkland* (1972), Ga., 187 S. E. 2d 296.

Plaintiff cites *McDaniel* v. *McDaniel* (1964), 245 Ind. 551, 201 N. E. 2d 215, for the proposition that property held in trust for the husband's benefit is not exempt from consideration on questions of alimony. The cited case is not on point. In *McDaniel* an action for divorce was brought by the husband, and the appellant-wife filed a cross-claim for divorce, alleging that she was entitled to alimony as part of a spendthrift trust which *the husband had created in himself*. The corpus of the trust fund was created from the balance paid in settlement for personal injuries suffered in an accident which occurred *during the marriage*. This Court was persuaded by the fact that the husband was constructively attempting to preclude his wife from reaching the trust *res* in the event of divorce:

"These parties in their briefs and in argument before this court, gave primary consideration to the contention that the spendthrift trust in controversy was created by appellee for the fraudulent purpose of removing the *res* thereof from the reach of appellant in event of a divorce, which action appellee's conduct was designed to force upon appellant. The evidence in support of this contention is persuasive.

"However, our decision need not rest upon actual fraudulent design. Under the circumstances here presented, such a conveyance is said to be constructively fraudulent if not actually fraudulent. Upon this issue it has been stated:

" '. . . Where, by terms of the conveyance, the husband retains the use of the property transferred, or the grantee agrees to support him [the husband] for life, . . . such conveyance is fraudulent and may be set aside where its effect is to defeat the wife's decree for alimony. . . .' 26 Am. Jur. § 197, p. 816.

"Furthermore, as previously noted, appellant had an equitable, if not a legal, interest in the *res* of said estate because of the fact that payment thereof to the appellee was made, at least in part, as compensation for the support of both the appellant and the appellee. Furthermore, the estate was of such a nature that, upon the death of appellee, the *res* thereof would enure to the appellee's estate, of which appellant would have received no less than a one-third (dower) interest had she survived appellee as his wife." 245 Ind. at 560-561.

The Supreme Court of Kansas has treated the question of whether a beneficiary's interest under a discretionary trust is subject to a claim for alimony:

"There is a conflict of authority on the question of whether the interest of a beneficiary under such a trust may be reached to satisfy a judgment for alimony. Griswold on Spendthrift Trusts, par. 339. But in any event and whatever the name given to the trust, the beneficiary's interest must be a present and determinable one. We are here dealing only with the corpus of the estate. Clearly in that feature, at least, the instant trust falls within the general class of 'discretionary trusts.' As to such trusts, it is said in Restatement, Trusts, Sec. 155:

" 'If by the terms of a trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply, a transferee or creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal. * * *'.

" 'A trust containing such a provision as is stated in this Section is a "discretionary trust" and is to be distinguished from a spendthrift trust, and from a trust for support. In a discretionary trust it is the nature of the beneficiary's interest rather than a provision forbidding alienation which prevents the transfer of the beneficiary's interest. The rule stated in this Section is not dependent upon a prohibition of alienation by the settlor; but the transferee or creditor cannot compel the trustee to pay anything to him because the beneficiary could not compel payment to himself or application for his own benefit.'

"To the same effect, it is said in Vol. 1, Scott on Trusts, p. 774: 'Where by the terms of the trust a beneficiary is entitled only to so much of the income or principal as the trustee in his uncontrolled discretion shall see fit to give

him, he cannot compel the trustee to pay to him or to apply for his use any part of the trust property. In such a case, an assignee of the interest of the beneficiary cannot compel the trustee to pay any part of the trust property, nor can creditors of the beneficiary reach any part of the trust property. This is true even in jurisdictions where spendthrift trusts are not permitted. *If the beneficiary himself cannot compel the trustee to pay over any part of the trust fund, his assignee and his creditors are in no better position. It is the character of the beneficiary's interest, rather than the settlor's intention to impose a restraint on its alienation, which prevents its being reached.'* (Italics supplied.) Also see 26 R. C. L. 1268; 65 C. J. 557. Certainly the instant trust is purely discretionary as to the principal, since in the absence of abuse of discretion—the trustee may withhold it altogether from the beneficiary if in his judgment the beneficiary is not capable of handling it. The trustee's testimony as to lack of capacity was not controverted and no showing made that the trustee had abused his discretion.

"The beneficiary has no right, as a matter of law, to require the trustee to turn over to him the principal of the estate or any part of it. It follows that the appellant—who married the beneficiary long after the trust had come into existence—cannot reach it.

"The Kansas decisions—including all which have been called to our attention by the parties—have been examined and we find none inconsistent with the conclusion here reached. It would unduly extend this opinion to review them." *In re Watts* (1945), Kan., 162 P. 2d 82, 87-88.

Finally, in an action by a divorced wife brought against her husband in which she joined the trustee as a party defendant, the South Carolina Supreme Court stated:

"The trust instrument, after directing that the trustee hold and invest the entire net income of the trust during the minority of the cestui, goes on to provide as quoted in the complaint:

" 'After Charles Andrew Collins attains age twenty-one years the trustee is authorized in her sole discretion to pay to the said Charles Andrew Collins, or to apply for his benefit or to pay over and deliver to him discharged of all trust the whole or any part of either the income or principal of the trust estate to the extent that she shall determine that he has habits of sobriety, thrift and economy and the trustee is satisfied as to his ability to

manage and control such property at the time of payment or distribution.'

"It further provides that after Charles Andrew Collins shall have attained the age of twenty-eight years he shall receive one-half of the net income and that the trustee shall have discretionary power to make additional payments to him upon the same conditions as were applicable prior to his attaining that age. It further provides that when Charles Andrew Collins shall attain the age of thirty-three years the trust shall terminate and the entire trust estate remaining shall be paid over to him discharged of all trust. It further provides for the handling and ultimate distribution of the trust assets in the event of the death of Charles Andrew Collins prior to the termination of the trust.

"Charles A. Collins, the beneficiary, is now twenty-two years old. During the next six years, if he lives so long, he will by the express terms of the trust be entitled only to so much of the income or principal as the trustees in their sole discretion shall see fit to give him. During that period he cannot compel the trustees to pay any part of the trust fund; and his creditors, who are in no better position, cannot reach it. Restatement of the Law of Trusts, 2nd, Section 155.1; Scott on Trusts (2nd Ed.), Section 155, p. 1083; Kiffner v. Kiffner (1919), 185 Iowa 1064, 171 N. W. 590. Cf. Albergotti v. Summers, 203 S. C. 137, 26 S. E. 2d 395.

"The complaint here showed on its face that by the express provisions of the trust instrument the defendant Collins would have no legal right, prior to his attaining the age of twenty-eight years, to compel payment of any part of the trust fund. There being no allegation that he had reached that age, it failed to state a cause of action with respect to the trustees. On its first ground before mentioned, the demurrer of the defendant Williams should have been sustained. We need not explore the others." *Collins* v. *Collins* (1961), S. C. 122 S. E. 2d 1, 7-8.

We find that the weight of the best reasoned authority supports the position of the trial court in the case at bar. Therefore, we shall not disturb his judgment here.

As to whether the trial court erred in evaluating the defendant's stock in Loeb's Loeb and Hene, Inc. at $70.00 per share, we find there was sufficient evidence before the court to support its finding as to the stock's value.

The plaintiff's expert testified that the book value of the stock, after depreciation, was $244.14 per share. The defendant offered evidence that the stock had a fair market value of $36.45 per share. This Court cannot say that the trial court abused its discretion in assigning such a value to the stock in question. The trial court has broad discretion in ascertaining the amount of property settlements. Ind. Ann. Stat. § 3-1217 (1968 Repl.); IC 1971, 31-1-12-14 provides in pertinent part:

> *"3-1217. Alimony.*—The court shall make such decree for alimony, in all cases contemplated by this act, as the circumstances of the case shall render just and proper, and such decree for alimony, heretofore made or hereafter made, shall be valid against the husband, whether asked for in the petition or given by the judge on default. [Acts 1873, ch. 43, § 20, p. 107.]"

Considering the evidence that was before the trial court and observing that on cross-examination the plaintiff's expert admitted that the value of $244.14 did not reflect a true market value, this Court finds no abuse of trial court discretion upon this issue.

Contrary to plaintiff's contention, the lower court did not err in the amount it granted for child support. The court allowed $200.00 per month for support of the two minor children. The plaintiff's argument is that because the defendant held a remainder interest in the trust fund his assets were greater than the trial court had considered them to be, and, therefore, the child support award should have been greater. However, the plaintiff overlooks the fact that the defendant has no present possessory interest in the trust fund nor any present income interest from it. Further, it should be noted that the defendant's children are provided for by the trust agreement in that their remainder will vest if their father predeceases the settlor. The trial court had before it the statement of the defendant's financial position. Based on the evidence before the trial court, the child support award

was adequate. The trial court has reached an award which it found to be just and proper taking into consideration the father's earnings and the station in life to which the children and parents were accustomed. It acted entirely in accordance with IC, 1971, 31-1-12-15; Ind. Ann. Stat. § 3-1219. We will not disturb its judgment here.

Plaintiff assigns error in that the trial court had waived and forgiven a deficit due under a support order *pendente lite.* The plaintiff mentions this assignment of error at page 40 of her brief, but fails to offer any cogent argument and cited authority upon this issue. In *Hitch* v. *State* (1972), 259 Ind. 2, 284 N. E. 2d 783, 786, we said:

> "It is unrealistic to think that counsel may, by mere suggestion of error, thrust upon the court the burden of independently exhausting the possibilities that he may correct. Reason and authority are the lawyers' work product and become the tools of the court, without which it cannot function."

In *Wright* v. *State* (1958), 237 Ind. 593, 147 N. E. 2d 551, this Court said:

> "It is incumbent upon the Appellant on appeal, whether the cause be civil or criminal, to affirmatively show harmful error by argument and citation of authorities." 237 Ind. at 595.

We, therefore, do not reach an examination of plaintiff's argument and accordingly reject her unsupported contention.

For all of the foregoing reasons, the judgment of the trial court is hereby affirmed.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 301 N. E. 2d 349.