Nancy J. McNEVIN, Appellant
(Petitioner Below),

v.

Robert W. McNEVIN, Sr., Appellee
(Respondent Below).

No. 2–1280A414.

Court of Appeals of Indiana,
Second District.

March 30, 1983.

Robert A. Burns, Condos & Burns, Indianapolis, for appellant.

Duge Butler, Jr., Indianapolis, for appellee.

## ON PETITION FOR REHEARING

BUCHANAN, Chief Judge.

Petitioner-appellant Nancy J. McNevin (Nancy) petitions this court for rehearing of our January 24, 1983 opinion published at 444 N.E.2d 320, which opinion affirmed the trial court's judgment dismissing Nancy's personal injury claim against her husband Robert W. McNevin, Sr. (Robert). We grant rehearing, vacate our earlier opinion, and reverse the trial court's judgment.

## FACTS

The record discloses that in May of 1978, after the parties had separated, Robert allegedly struck and injured Nancy. Robert filed a petition for dissolution of marriage in the Hendricks Circuit Court in November of 1978. A dissolution decree incorporating a previously negotiated settlement agreement was entered in September of 1979. The sections of the dissolution decree pertinent to this decision are set forth below:

6. *Settlement Agreement. The settlement agreement of the parties, as set forth hereinafter in this decree, was duly executed by each of the parties freely and without duress and after consultation and advice from counsel, and the rights of the parties should be adjudged accordingly.*

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by this Honorable Court as follows:

A. *Dissolution.* The bonds of matrimony heretofore existing between the parties are hereby absolutely dissolved effective with the issuance of this decree.

B. *Property Settlement Agreement.*

1. Personal Property. The petitioner [Robert] shall be the owner of all household goods, furniture and furnishings now in his possession as well as his own personal effects, clothing and jewelry. In addition, the petitioner shall be the owner of the following property:

motorcycles presently in possession of respondent

Datsun 280Z 1979 automobile;

1 Aluminum houseboat with Chrysler engine;

1 fishing boat and trailer;

household goods in El Lago, Florida real estate;

certain savings account at Peoples Bank and Trust Company; and, business account at Peoples Bank and Trust Company;

a certain Honda automobile which will be titled to the son of the parties at the time of the final Decree

except as otherwise provided in this agreement, all other tangible personal property heretofore reduced to his possession, or standing in his sole name.

*Except as otherwise provided in this agreement, the respondent shall be the owner of all intangible* and tangible *personal property heretofore* reduced to her possession or *standing in her sole name,* and the following property;

a certain Dodge wagon automobile;
a certain 1979 Oldsmobile;
a certain Chasta motor home;
a certain speed boat;
2 small Honda motorcycles;
all household goods located at 650 Arthur Drive, Indianapolis, Indiana.

As well as her personal effects, clothing and jewelry.

2. *Real Property.* That the wife be [sic] is hereby adjudged the individual owner of a [sic] certain pieces of real property commonly known as follows:

650 Arthur Drive, Indianapolis, Indiana
558 Arthur Drive, Indianapolis, Indiana
1 lot on John Johns River, Crescent City, Florida; (which said real estate has heretofore been deeded from the husband to the wife)

3. *Obligations.* The petitioner and respondent hereto each agree as to the separate obligations assumed hereunder to save the other party harmless from any further liability thereon.

The petitioner shall assume and pay until discharged in full, according with its terms, the existing indebtedness on the following:

(A) Master Charge in the approximate sum of $673.65

(B) L. Strauss & Co. in the approximate balance of $51.12

(C) Sears in the approximate balance of $2929.70

(D) Penny's account in the approximate sum of $705.20

(E) Ready Credit account in the approximate balance of $795.18

(F) Town & Country account in the approximate balance of $465.07

(G) VISA account in the approximate balance of $877.94

(H) Block's account in the approximate balance of $208.48

(I) Ayres account in the approximate balance of $639.71

(J) Lazarus account in the approximate balance of $95.13

(K) Woolco account in the approximate balance of $100.00

(L) Automobile insurance on wife's Oldsmobile for a period of one year from date of entry of this Decree.

4. Petitioner agrees to make arrangements for and to pay the cost of repair of damage to the den floor in the residence at 650 Arthur Drive, Indianapolis, Indiana within thirty (30) days from the date of entry of this Decree.

5. Petitioner agrees to waive that certain sum of One Thousand Dollars ($1,000.00) heretofore agreed to be paid by the wife to the husband for the purchase of a certain 1979 Oldsmobile.

6. Husband agrees to pay to the wife as alimony judgment the sum of Sixteen Thousand Eight Hundred Dollars ($16,-800.00) payable in twenty-four (24) equal monthly installments of Seven Hundred Dollars ($700.00) per month beginning on October 1, 1979 and continuing month to month thereafter until paid in full or until the death of the wife whichever occurs first. It is understood by and between the parties that said sum agreed to be paid by petitioner is an alimony judgment, the intent of the parties being to provide the husband with a deductable [sic] expense for Federal and State income tax purposes.

7. Husband agrees to assume and pay schooling expenses for the children of the parties.

8. *Life Insurance.* That the petitioner shall have the sole possession of the policies of life insurance on his life and the respondent shall become the owner of the existing life insurance policies on her life, and each party assumes and agrees to pay the premiums on said policies after the entry of this Decree of Dissolution.

9. Petitioner agrees to assume and pay Income Tax liabilities for the year 1979 incurred on his behalf and to save the respondent harmless from any liability thereon.

10. *Accounts.* That the Respondent has a checking account at the Indiana National Bank in Indianapolis, Indiana, this said account shall become the property of the wife.

11. *Disclosure. The respective parties to this cause of action state that they have made a full and complete disclosure to one another of all the assets that have been accumulated during the term of the marriage and have disclosed to each other all of the financial liabilities, either jointly or severally, which were incurred during the term of this marriage.*

12. *Attorney's Fees.* Petitioner shall pay the respondent's attorney his reasonable attorney's fees in the total amount of One Thousand Five Hundred Dollars ($1,500.00) within thirty (30) days from the entry of this Decree.

13. *Costs.* Costs herein are taxed against the petitioner and have been paid as shown by the receipt of the Clerk, presented to the Court.

14. *Modification or Waiver.* No modification or waiver of any of the terms of this agreement shall be valid unless in writing and executed by both parties hereto. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default.

15. *Execution of Additional Instruments.* Each party hereto shall, at the request and expense of the other, execute and deliver to the other any and all releases, deeds, bills of sale, instruments of assignment and other documents which the other may reasonably require for the purpose of giving full force and effect to this agreement.

*Record* at 28–32 (emphasis supplied). This agreement did not contain a general release clause.

In May of 1980, Nancy commenced this cause of action by filing a complaint in the Marion Superior Court. Alleging she had sustained injuries as a result of Robert's 1978 attack upon her, Nancy prayed for damages of $200,000.

Concluding that a personal injury claim is a chose in action and therefore property subject to distribution on dissolution, the trial court dismissed Nancy's complaint because a dissolution decree bars an independent action involving divisible marital property. The judgment of dismissal[1] reads in pertinent part as follows:

Parties by counsel, oral argument heard on Defendant's Motion to Dismiss. The Court being duly advised in the premises finds as follows:

1. The incident on which this claim for injuries is based arises from an alleged assault and battery, which occurred on May 27, 1978, while the parties were husband and wife.

2. A dissolution decree dissolving this marriage was entered on September 19, 1979, by the Hendricks Circuit Court and the Decree incorporated the terms of a Property Settlement Agreement.

3. By the terms of the Property Settlement Agreement the parties finalized the disposition of their "property and property rights", "freely without duress and after consultation and advice from counsel."

4. The agreement included a money judgment to the wife in the amount of Sixteen Thousand, Eight Hundred Dollars ($16,800.00), as well as the real estate of the parties.

5. *A tort claim is a chose in action which was or should have been considered in reaching the property settlement agreed to by the parties and incorporated into the Decree of Dissolution.*

*Record* at 39 (emphasis supplied).

*Subsequent* to the filing of the motion to correct error in this case, the attorney representing Nancy in the dissolution action

---

1. The dismissal is more properly treated as a summary judgment because matters outside the pleadings were considered. Ind.Rules of Procedure, Trial Rule 12(B).

filed an affidavit stating that Nancy had asked him not to disclose during negotiations her intention to assert the battery claim in a separate action after the dissolution proceeding was concluded. There is nothing, however, in the record indicating that Robert was aware during the settlement negotiations, or that Robert or the trial court was aware during the dissolution action, that Nancy had this specific intention.

After the trial court denied her motion to correct error, Nancy perfected this appeal.

### ISSUE

■ Essentially, Nancy raises one issue: Was her personal injury claim extinguished by the dissolution decree which had been executed pursuant to a settlement agreement?

### DECISION

PARTIES' CONTENTIONS—Nancy argues that the trial court's judgment eviscerates the supreme court's action in abrogating the doctrine of interspousal immunity in *Brooks v. Robinson*, (1972) 259 Ind. 16, 284 N.E.2d 794, and maintains that the judgment foreclosed her right under IND. CONST. art. 1, § 20 to trial by jury of her tort claim. She insists that her unliquidated personal injury claim is not property. But even if it is property, it is at most "intangible personal property . . . standing in her sole name" which she owns under the terms of the dissolution decree. Her claim was thus preserved, not extinguished, by the decree; and her trial attorney's affidavit shows that she did not waive the claim as part of the settlement agreement.[2]

Robert has not submitted an appellee's brief.

CONCLUSION—Nancy's claim is not extinguished by the dissolution decree; therefore, summary judgment in Robert's favor was improper.

■ Before proceeding, we clear away one piece of legal underbrush created by Nancy's reliance on *Brooks v. Robinson, supra*. The Indiana Supreme Court in *Brooks* abrogated the common-law rule of interspousal tort immunity. So Nancy is correct in claiming that her cause of action cannot be barred on the ground that the alleged tortious conduct occurred while the parties were married. The fact that the alleged tortious conduct occurred while the parties were married does not bar Nancy from bringing her tort action.

In arriving at the ultimate conclusion that Nancy is estopped to assert her tort claim, the trial court did not rely on the concept of interspousal tort immunity. Instead, reliance was on the principle that a dissolution decree bars an independent action involving property rights connected with the marriage. *See Anderson v. Anderson*, (1979) Ind.App., 399 N.E.2d 391. The trial court's analysis began with the premise that a tort claim is a chose in action and therefore property. It then linked to this premise the conclusion that Nancy's tort claim was marital property, subject to division in the dissolution action. Such is not the case.

■ A "chose in action" has been defined as "a personal right not reduced into possession but recoverable by a suit at law." *Chicago, Burlington & Quincy R.R. v. Dunn*, (1869) 52 Ill. 260; 63 Am.Jur.2d *Property* § 26 (1972). Choses in action are personal property. *Coty v. Cogswell*, (1935) 100 Mont. 496, 50 P.2d 249. Used in its broadest sense, the term encompasses all rights of action whether they sound in contract or

---

**2.** The affidavit of Nancy's attorney is of no effect to show that she did not waive her personal injury claim as part of the settlement agreement. It attempts to go beyond the face of the decree. Furthermore, because it did not accompany the motion to correct error, it cannot be considered a part of the record. It is axiomatic that affidavits may not be filed subsequent to the motion to correct error as a

means for placing additional evidence in the record. *E.g., Jackson v. Beard*, (1970) 146 Ind. App. 382, 255 N.E.2d 837.

Further, we do not understand the existence of such an affidavit in view of Canon Four of the Code of Professional Responsibility (A Lawyer Should Preserve the Confidences and Secrets of a Client).

in tort. *Id.; Bennett v. Bennett,* (1889) 116 N.Y. 584, 23 N.E. 17; *Gibson v. Gibson,* (1877) 43 Wis. 23. And, there are a series of cases involving the early Married Woman Property Acts which hold that the designation "chose in action" does apply to a personal injury claim. *Chicago, Burlington & Quincy R.R. v. Dunn, supra; Musselman v. Galligher,* (1871) 32 Iowa 383; *Berger v. Jacobs,* (1870) 21 Mich. 215.

The above cases notwithstanding, the phrase "chose in action" is usually confined to assignable rights of action arising out of contract and perhaps tortious injury to property or for tort connected with a contract. Thus, the more general use of the term excludes tort actions for personal injuries. *Coty, supra; Pulver v. Harris* (1873) 52 N.Y. 73; *Gibson, supra.*

We have found no Indiana authority addressing the issue whether a tort claim for a personal injury is a chose in action and therefore property. However, it is unnecessary for us to resolve this question. Even if Nancy's personal injury claim is classified as a property interest, it fails to qualify as *marital* property because it was not susceptible to division at the time of dissolution.

Although the Indiana Dissolution of Marriage Act provides for parties to enter into an agreement disposing of any property owned by either or both of them, subject to the court's approval,[3] or, failing such agreement, for the court to divide the property of the parties,[4] there is no statutory definition of what constitutes marital property. And, despite the fact that a burgeoning body of case law has dealt with finding what does and does not constitute marital property, a tort claim by one spouse against the other which has not been reduced to judgment has heretofore gone unconsidered. However, in cutting this Gordian knot, we find the following cases helpful.

In *Loeb v. Loeb,* (1973) 261 Ind. 193, 301 N.E.2d 349, involving a husband's vested remainder subject to divestment in a trust created by his mother, the court held that the remainder was not property includable

in a property settlement award, as the husband had "no *present* interest of *possessory* value." 301 N.E.2d at 353 (emphasis added). The *Loeb* court quoted favorably *Storm v. Storm,* (1970) Wyo., 470 P.2d 367, in which the Wyoming Supreme Court made the following statement:

"With respect to future property, we think the rule must be, when a court divides property incidental to the granting of a divorce, the court is limited by the amount of property in its hands for division and *a mere expectancy is not subject to division. Hill v. Hill,* 82 Cal. App.2d 682, 187 P.2d 28, 36."

301 N.E.2d at 354 (emphasis supplied).

The *Loeb* case was followed by *Wilcox v. Wilcox,* (1977) 173 Ind.App. 661, 365 N.E.2d 792, and *Savage v. Savage,* (1978) Ind.App., 374 N.E.2d 536. In rejecting contentions that future income and pension benefits extinguishable by death should be classified as marital property, the court in those cases concluded that "marital property" includes only those assets in which there is a vested present interest. *See also Metropolitan Life Insurance Co. v. Tallent,* (1983) Ind., 445 N.E.2d 990; *Libunao v. Libunao,* (1979) Ind.App., 368 N.E.2d 574; *Goodwill v. Goodwill,* (1978) 178 Ind.App. 372, 382 N.E.2d 720.

The above line of cases firmly establishes the principle that marital property is property which is capable of division at the time of dissolution. Even assuming that a tort claim is property ·by virtue of being classified a chose in action, Nancy's claim, which was not reduced to judgment at the time of final separation, was not so divisible, i.e., was not marital property. She had a naked right to bring her action to trial in an attempt to recover damages, but no present, tangible pecuniary interest capable of division.

Having concluded that Nancy's personal injury claim cannot be classified as "marital property" capable of division, we are still confronted with the dilemma of the effect

---

**3.** Ind.Code 31–1–11.5–10.

**4.** IC 31–1–11.5–11.

of Nancy's failure to reveal her claim to the trial court for its consideration during the dissolution proceedings.

One horn of that dilemma is that our courts have held that certain non-possessory rights or interests should be *considered* by dissolution judges, even though the interests do not qualify as divisible marital property. Thus, in *Savage, supra,* the court concluded that although pension benefits extinguishable by death could not be *divided* as marital property, they were to be *considered* by the trial court when allocating properly divisible property. The *Savage* court relied upon *Wilcox, supra,* for the proposition that to divide and allocate such benefits would be tantamount to an award of maintenance exceeding the value of property available for distribution. But because I.C. 31–1–11.5–11 provides that the court should consider the earnings or earning ability of the parties and because early cases like *Hedrick v. Hedrick,* (1891) 128 Ind. 522, 26 N.E. 768, require an examination of all relevant circumstances surrounding the parties, Judge Lybrook could only conclude in *Savage* that "the rights of either spouse to payments under a pension plan must be considered by the trial court in determining the manner in which marital assets are to be distributed . . . ." 374 N.E.2d at 539–40.

The other horn of the dilemma is that Nancy may have been required to reveal her personal injury claim for the trial court's consideration by virtue of her representation in the accepted settlement agreement that she had revealed *all of her "assets"* and financial liabilities. Indiana law favors negotiated settlement agreements—a fact evidenced by the language of I.C. 31–1–11.5–1.[5] But courts are free to reject or modify settlement agreements which are unfair or unreasonable. I.C. 31–1–11.5–10; *Waitt v. Waitt,* (1977) 172 Ind. App. 357, 360 N.E.2d 268; *Flora v. Flora,* (1975) 166 Ind.App. 620, 337 N.E.2d 846. And, in order to determine if an agreement is fair and reasonable, the trial court must be cognizant of all pertinent information. Thus, if Nancy's tort claim were an "asset" to be revealed under the terms of the settlement agreement,[6] equitable estoppel would bar her assertion of the claim in an independent action.

5. "(a) This chapter shall be construed and applied to promote its underlying purposes and policies.

      \*     \*     \*     \*     \*     \*

(4) To provide for separation agreements." I.C. 31–1–11.5–1.

6. In construing the language of a separation agreement, we apply the general rules governing the construction of all contracts. *Baugher v. Barrett,* (1975) 128 Ind.App. 233, 145 N.E.2d 297; *Higgins v. St. Joseph Loan & Trust Co.,* (1933) 98 Ind.App. 674, 186 N.E. 910. The words of a contract are taken to be used in their ordinary or popular sense, absent a clear indication that a technical or special meaning was intended. *Haworth v. Hubbard,* (1942) 220 Ind. 611, 44 N.E.2d 967; *Nimet Industries Inc. v. Joy Manufacturing Co.,* (1981) Ind.App., 419 N.E.2d 779. Therefore, because standard dictionaries define an asset as "a useful or valuable quality or thing," AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (1970), or "an item of value owned," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1971), it is arguable that Nancy's tort claim was an asset within the meaning of the separation agreement. Certainly Nancy would not have begun this lawsuit if she did not consider her claim to have some value, even though the presently ascertainable value is unknown.

Of course, the word "asset" may also be used in a more limited sense. For instance, the appellate court has declared that "[a] claim for damages for causing the death of a party is not assets [sic] of the deceased, within the meaning of the statute authorizing the granting of letters of administration in this state." *Tri-State Loan & Trust Co. v. Lakeshore & M.S. Ry. Co.,* (1921) 76 Ind.App. 141, 131 N.E. 523, 524. And, the supreme court, in addressing the question of a bank's insolvency defined an asset as something which could be "realized upon in cash within a reasonable time." *Walter v. State,* (1935) 208 Ind. 231, 194 N.E. 268, 273. A word, however, "may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner,* (1918) 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372. Although there are no Indiana cases so deciding, the word "assets" as used in the context of a dissolution action must be construed in its broadest sense. This is so because a broad construction more nearly effectuates the intent of the parties, the ultimate goal in the interpretation of any contractual provision.

In our previous opinion, now vacated, we escaped the dilemma by holding that a tort claim was an asset which had not been disclosed by Nancy in the dissolution proceedings; therefore, she was equitably estopped to thereafter pursue it . . . a defensible position as far as it went, its weakness being that an inchoate, unliquidated tort claim could not be considered by the trial court in the dissolution proceedings (division of property). We fail to see how the trial judge was handicapped in approving or disapproving the settlement agreement by Nancy's failure to reveal her tort claim.

■ Unlike future pension benefits, which have some approximate value, and unlike future salary, which may be estimated and discounted to present worth, an unliquidated tort claim has no present ascertainable value. Any attempt at valuation would be based upon pure speculation, requiring hypotheses as to Robert's guilt or innocence and the nature and extent of Nancy's injury, if any. Thus, we conclude that such an unliquidated claim could not be considered in the dissolution proceedings even had it been made known.[7] And, because Nancy's claim was not required to be considered by the trial court, her failure to disclose the claim does not preclude an independent action.

Rehearing granted; the judgment of the trial court is reversed and the cause remanded for trial on the merits.

CONOVER and YOUNG, JJ. (sitting by designation) concur.

---

7. Also, a dissolution court's consideration of personal injury claims may well contravene the intent of the legislature in enacting a "no-fault" system of divorce. The legislature has set forth criteria to be considered by the courts in dividing marital property upon dissolution: In no pertinent provision has it included spousal abuse. *See* I.C. 31–1–11.5–11. Thus, the Dissolution Act itself suggests that Robert's alleged tortious conduct was not a matter to be taken into account during the parties' dissolution action.