**In re the Marriage of Robin ENGLAND, Appellant–Respondent,**

v.

**April ENGLAND, Appellee–Petitioner.**

**No. 36A01–0608–CV–328.**

Court of Appeals of Indiana.

April 30, 2007.

---

**2.** While the trial transcript is paginated, the sentencing hearing is not.

Alison T. Frazier, Alcorn Goering & Sage, LLP, Madison, IN, Attorney for Appellant.

Stephanie S. Mellenbruch, Montgomery, Elsner & Pardieck, LLP, Seymour, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Robin England ("Husband") and April England ("Wife") were divorced in 2006. As part of the decree of dissolution, the trial court valued the marital assets, including the value of living on the property on which the marital residence sits, and divided them equally between the parties. Husband now appeals, contending that the trial court erred in including a defeasible interest in real property as a marital asset and in its valuation of that interest. Concluding that the trial court properly considered the value of Husband's continued use and occupancy of what was the marital property in dividing the marital assets, and also concluding that the value the trial court assigned to Husband's interest is supported by the evidence, we affirm.

### Facts and Procedural History

Husband and Wife were married in 1977. In 1988, Husband's parents gave Husband and Wife 1.43 acres of land. In 1989, Husband and Wife completed construction of the marital residence on that property. In 2001, Husband entered into an agreement with his parents to purchase 38.57 acres adjacent to the 1.43 acres for $120,000. On that tract of land was a residence in which Husband's parents had resided for many years, and in which they still resided at the time of the dissolution hearing. In 2002, Husband and Wife entered into a Real Estate Purchase Option Agreement with Rumpke of Indiana, LLC, regarding the 1.43 acres, and Husband entered into a similar agreement with Rumpke regarding the 38.57 acres. Rumpke exercised its option to purchase in 2003 and entered into a Rental Agreement with Husband, Wife, and Husband's parents, Leslie and Sylvia England. The Rental Agreement provided:

Lessor and Lessees agree that Lessees shall have and hold the Property for a term not less than the natural life of Leslie England and Sylvia England and Robin England and April England. The lease shall commence on the date of the Closing of the sale of the Property by Lessees to Lessor and shall terminate 60 days after the later of the death of Leslie England, Sylvia England, Robin England or April England.

This Lease and right to occupy shall terminate if:

1. Leslie England, Sylvia England, Robin England and April England shall all vacate or abandon the Property; or

2. Leslie England, Sylvia England, Robin England and April England shall cease to use the Property as their primary residence; or

3. the dwellings located on the Property shall be destroyed or become uninhabitable due to fire or other casualty; or

4. Lessees shall oppose or refuse to support Lessor's zoning and permit applications for expansion of the landfill located adjacent to the Property.

Appellant's Appendix at 104–05. The Rental Agreement also provided that the Englands are permitted to "occupy, make use of and fully utilize" the buildings and other improvements on the property and have reasonable timber rights to the property. *Id.* at 105–06. The total purchase

price for the two parcels of land was $427,000.

Wife filed a petition for dissolution of marriage in August 2005, and Husband filed a counter-petition. Following a hearing, the trial court entered a decree of dissolution of marriage, which provides in pertinent part:

*Findings of Fact*

* * *

15. On September 21, 2004, [Husband] and [Wife] netted $258,379.85 from the agreement with Rumpke to purchase the 1.43 acre parcel and $113,896.26 for the agreement with Rumpke to purchase the 38.5 acre parcel. [Husband] and [Wife] remained in the marital residence and [Husband's] parents remained in the home on the 38.5 acre tract under the terms of the rental agreement with Rumpke.

16. Prior to the rental agreement with Rumpke, the parties owned the property.

17. The agreement with Rumpke netted the parties a total of $372,276.11, plus gave them a life long one dollar per year lease on the real estate.

18. The right to live on the real estate for the remainder of one's life has a value. This value can be determined by the benefit the party receives during his or her lifetime.

19. During his deposition on February 6, 2006, [Husband] testified that one home would rent for approximately $200 per month and the other home would rent for approximately $300 per month. He additionally testified that he was unaware of the rental value of the farm-ground, timber, outbuildings, and remaining acreage.

20. The 38.5 and 1.43 acre parcels contain a total of two homes, at least 6 outbuildings, farm-ground, and timber.

21. [Wife] provided expert testimony that the value of [Husband's] life long lease or life estate is $152,437.00. This figure was based on [Husband's] interest in a life long lease for property with a rental value of $700 per month. The expert determined that the remaining acreage and buildings were conservatively valued at an additional $200 per month for rental purposes, and this figure took in consideration [Husband's] parents' rights to use the property by averaging [Husband's] and [Husband's] father's life expectancies.

22. [Husband] failed to produce an expert to value the parties' interest in the property or challenge [Wife's] expert's valuation.

23. During the pendency, [Wife] has lived in the former marital residence.

24. During the pendency, [Husband] has lived with his parents in the other home located on the 38.5 acre parcel.

25. During trial, [Wife] stated she no longer wished to live in the marital residence....

26. [Husband] indicated that he may move to Michigan and does not want possession of the marital residence; however, [Husband's] testimony during the provisional hearing and that of his mother at the final hearing indicated he would in fact remain on the leased real estate. [Husband's] mother testified that [Husband] would live on the leased premises and failed to even

suggest that [Husband] would live elsewhere.

27. The Court is persuaded by the evidence that [Husband] will take advantage of the rental agreement and live on the leased property.

* * *

*Conclusions of Law and Decree of Dissolution of Marriage*

* * *

72. Pursuant to Indiana Code 31–15–7–5, the Court has presumed an equal division of the property. . . .

73. The Court orders the division of the marital estate as set out in Exhibit "A" (attached).

* * *

75. [Husband] shall be awarded the right to live on the property leased from Rumpke. [Wife] is ordered to vacate the property within 45 days of the decree of dissolution and subsequently not interfere with [Husband's] use of the leased premises.

*Id.* at 142–49. Exhibit "A" indicates that a life estate in the leased property valued at $152,437.00 is set aside to Husband. *Id.* at 151. Husband now appeals the trial court's inclusion and valuation of the leased property as part of the marital estate.

*Discussion and Decision*

I. Standard of Review

■ The division and valuation of marital assets is a matter within the sound discretion of the trial court. *Hyde v. Hyde,* 751 N.E.2d 761, 765 (Ind.Ct.App. 2001). The party challenging the trial court's property division must overcome a strong presumption that the court complied with the statute and considered the evidence on each of the statutory factors. *Id.* We will not reweigh the evidence or assess the credibility of the witnesses and will consider the evidence in the light most favorable to the judgment. *Galloway v. Galloway,* 855 N.E.2d 302, 304 (Ind.Ct. App.2006). Although the circumstances may have justified a different property distribution, we may not substitute our judgment for that of the dissolution court. *Hyde,* 751 N.E.2d at 765.

Additionally, Husband is appealing from a decision in which the trial court entered findings of fact and conclusions thereon pursuant to a request from one of the parties. *See* Ind. Trial Rule 52(A). Thus, we must first determine whether the evidence supports the findings and then whether the findings support the judgment. *Truelove v. Truelove,* 855 N.E.2d 311, 314 (Ind.Ct.App.2006). The trial court's findings and conclusions will not be set aside unless clearly erroneous. *Shady v. Shady,* 858 N.E.2d 128, 140 (Ind.Ct.App. 2006), *trans. denied.* The trial court's findings of fact are clearly erroneous if the record lacks any evidence or reasonable inferences to support them, and its judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings. *Truelove,* 855 N.E.2d at 314.

II. Inclusion of Husband's Interest in Rumpke Property

■ Husband first contends that the trial court erred in including his interest in the Rumpke property as a marital asset subject to division, citing *Vadas v. Vadas,* 762 N.E.2d 1234 (Ind.2002), for the proposition that property owned by a third party is not marital property. In *Vadas,* husband, prior to marriage, sold a home he owned to his father. When husband and wife were married, wife sold her home and moved in to father's house with husband. Wife used some of the proceeds from the sale of her home to remodel father's house.

All parties expected that some day, husband and wife would buy the house back from father, but they had not done so by the time wife filed for divorce. The trial court treated father's house as a marital asset valued at $78,000. The trial court awarded the interest in the house to husband and ordered him to pay half its value to wife. On appeal, the supreme court held that the trial court erred in including the house as a marital asset. Citing the "baseline principle of Indiana family law that '[o]nly property with a vested interest at the time of dissolution may be divided as a marital asset,'" *id.* at 1235 (quoting *Mullins v. Matlock,* 638 N.E.2d 854, 856 (Ind.Ct.App.1994), *trans. denied*), and noting that the sale of the home back to husband and wife was to occur at some unspecified future date contingent on husband and wife's finances and that neither price nor terms had been discussed, the court held that husband and wife did not have a present vested interest in the home, but only a "remote and speculative interest" that should have been excluded from the marital estate. *Id.* at 1236.

■ We agree that a trial court may not award property which is not owned by the parties. *See Moore v. Moore,* 482 N.E.2d 1176, 1179 (Ind.Ct.App.1985). We note that unlike the trial court in *Vadas,* however, the trial court herein did not include the Rumpke property as a marital asset. The trial court did not assign a value to the property, but rather assigned a value to Husband's continued right to live on the property. In *Vadas,* the supreme court noted that although the value of the home should not have been included as part of the marital estate, husband's "occupation of the remodeled residence reflects on the relative housing needs of [husband] and [wife] and is a relevant consideration in dividing the property that is a part of the marital pot." *Id.; see also In re Dall,* 681

N.E.2d 718, 722–23 (Ind.Ct.App.1997) (holding that the trial court erred in including the parties' residence in the marital estate because it was owned by wife's parents; however, the trial court could consider the value of wife's continued residence in the home); *Hacker v. Hacker,* 659 N.E.2d 1104, 1111 (Ind.Ct.App.1995) (holding that trial court properly considered husband's continued residence on a farm owned by his parents in dividing the marital assets).

Husband also contends that the trial court erred in including his interest in the Rumpke property because it is a defeasible interest, citing *Loeb v. Loeb,* 261 Ind. 193, 301 N.E.2d 349 (1973). In *Loeb,* a case of first impression in Indiana, our supreme court considered whether husband's vested remainder subject to a condition subsequent in a trust created by his mother should be included in the marital estate. In holding that it should not have been included, the court noted that the "central question is ... whether the *future interest* is so remote that it should not have been included in the property settlement award." *Id.* at 352 (emphasis added). Noting that husband's interest was subject to complete defeasance—that is, if he predeceased his mother, he would take nothing under the trust—the court held that he was "not *presently possessed of any pecuniary value* which could have been before the trial court for disposition." *Id.* at 353 (emphasis added). Accordingly, the court affirmed the trial court's refusal to include husband's remote interest in the trust in the property settlement award. *Id.; see also Fiste v. Fiste,* 627 N.E.2d 1368, 1371–72 (Ind.Ct.App.1994) (holding that, where husband's grandfather had devised real estate first to his wife for life, then to their daughter (husband's mother) for life, and then to her child or children in fee, husband's remainder interest in the real estate was too remote to be considered mari-

tal property, as it was subject to complete defeasance if he predeceased his mother); *but see Moyars v. Moyars*, 717 N.E.2d 976, 979–80 (Ind.Ct.App.1999), *trans. denied* (holding that where husband's father had died prior to the parties' dissolution, leaving one-half of his interest in real estate to husband's mother and the other one-half to husband and his siblings subject to a life estate in the mother, husband's remainder interest in the real estate had become vested upon the father's death and was includable in the marital estate).

Husband contends that his interest in the Rumpke property is akin to those in *Loeb* and *Fiste* that were excluded from the marital pot. He contends that his interest is completely defeasible and that he has no present interest of possessory value. We disagree. To the extent Husband's interest in the property is defeasible, he for the most part controls the defeasance. In *Loeb* and *Fiste*, the defeasance would occur because of an act over which the remaindermen had no control— death or a change in beneficiary. Here, Husband loses his interest in the property if he abandons the property, ceases to use it as his primary residence, or opposes Rumpke's plans to expand its landfill, all of which are choices Husband would make of his own accord.[1] Husband also loses his interest if both dwellings on the property are destroyed or become uninhabitable. Although it is true, as Husband points out, that the dwellings could be destroyed by fire or weather tomorrow, it is also true that they may never be destroyed and Husband will live on the property virtually rent-free for the remainder of his life. Finally, Husband also loses his interest when he dies, but in that case, it is possible he may have enjoyed the use of the property for a nominal rent up to the time of his death. *See Hacker*, 659 N.E.2d at 1111 (noting that husband was "correct in asserting that there are no guarantees he will be granted continued residence [on a farm owned by his parents, but] [c]onversely, he may also be allowed to live there rent-free for the remainder of his life" and therefore, the trial court did not err in considering husband's continued use and occupancy of the farm in dividing the marital assets).

In addition to this situation being unlike *Loeb* and *Fiste* because here, Husband controls the defeasance, this case is also unlike *Loeb* and *Fiste* because those cases dealt with future interests. Here, Husband presently has a possessory interest in the property for his use and enjoyment. Husband is able to live on the property, farm the land, and cut the timber. The fact that the property is available for Husband's continued use and occupancy at a minimal yearly rent is relevant under Indiana Code section 31–15–7–5(c) as an economic circumstance of the parties and the trial court did not abuse its discretion in considering this interest in dividing the marital estate.

### III. Valuation of Husband's Interest

Husband also contends that if, as we have held, his interest in the Rumpke property was properly considered in dividing the marital estate, the trial court erred in its valuation of that interest. The

---

1. The Rental Agreement states that the agreement terminates if *all four* named parties abandon the property, cease to use it as their primary residence, or oppose Rumpke's plans for expansion. Therefore, even if the other three named parties abandon the property, cease to use it as their primary residence, or oppose Rumpke's land use plans, the Rental Agreement remains in effect so long as Husband still resides there and does not oppose Rumpke's plans. In any of those situations, it is Husband's choice that would terminate the agreement and thus, his interest in the property.

trial court has broad discretion in determining the value of property in a dissolution action, and its valuation will not be disturbed absent an abuse of that discretion. *Hiser v. Hiser,* 692 N.E.2d 925, 927 (Ind.Ct.App.1998). The trial court's discretion is not abused if there is sufficient evidence and reasonable inferences therefrom to support the result. *Id.* The burden of producing evidence as to the value of marital assets is upon the parties to the dissolution proceeding. *Galloway,* 855 N.E.2d at 306.

The trial court determined that value of Husband's undivided interest in residing on the property was $152,437. This figure was based upon the testimony of Tom Reinhart, a certified public accountant hired by Wife to value the interest. Reinhart testified that in arriving at a value for a life-long lease of the property, he started with Husband's testimony from his deposition that one of the residences on the property could be rented for $200 per month and the other for $300 per month. He also averaged the life expectancy of Husband—the youngest of the parties to the Rental Agreement—and Husband's father—the oldest of the parties to the Rental Agreement—in calculating the present value of the interest. Reinhart also added in an additional amount for the value of the entire tract, not just the residences.

Husband indicated that he would like the party in possession of the marital residence to pay to the other party $150 per month in rent for as long as that party resides in the house. The only evidence Husband presented of the value of the interest was his testimony that "I can think of Ten Thousand Dollars ($10,000.00) off the top of my head ... because if I paid her Ten Thousand ($10,000.00) for the house, next week it's gone, we paid Ten Thousand Dollars ($10,000.00) for a month's rent." Tr. at 70. Husband testi-fied that $10,000 was all he would be willing to invest to stay on the property.

In *Dall,* in which we held that the marital residence should not have been included in the marital estate because it was owned by wife's parents but that the parties' equitable interest in the property could be considered in dividing the parties' actual marital assets, we noted that "in dividing the marital property, the trial court should not consider the full market value of the home, but should only consider the value of Wife's continued residence in the home." 681 N.E.2d at 722–23. Husband contends that pursuant to this standard for valuing an equitable interest in property, the value should be less than the fair market value of the home. Husband's argument seems to turn on the idea that only the value of the home should be included. However, the Rental Agreement gives Husband the right to reside on and use the entire property, not just the home. As the property was sold to Rumpke for $427,000, the value of Husband's interest in the property is not being unfairly inflated. Husband also contends that if we accept the $152,437 figure as the value of continued residence on the property, he should be attributed only twenty-five percent of that amount, as he is one of four tenants. By the trial court's dissolution order, Wife no longer has an interest in the property, and by the terms of the Rental Agreement, the remaining tenants each have an undivided interest in the entire property. If Husband's parents move from the property or predecease him, he still has an interest in the entire property. Clearly there is value in the potential for Husband to live in a residence and on property virtually rent-free for the remainder of his life. The trial court's valuation of Husband's interest in residing on the property is supported by the evidence adduced at trial and therefore, we

defer to the trial court's discretion in valuing Husband's interest at $152,437.

### Conclusion

The trial court did not abuse its discretion in considering Husband's continued residence on the Rumpke property in dividing the marital assets, or in valuing that interest at $152,437. The judgment of the trial court is affirmed.

Affirmed.

BAKER, C.J. and DARDEN, J., concur.